**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| NEW MEXICO FORWARD PARTY, BOB PERLS, MICHAEL VIGIL, DENNIS DINGE, HARRY MONTOYA and FRANCES KAVA, )<br><br>Plaintiffs, )<br><br>v. )<br><br>MAGGIE TOULOUSE OLIVER, in her official capacity as Secretary of State of New Mexico, and BARBARA DELANEY, in her official capacity as County Clerk of Luna County, New Mexico, )<br><br>Defendants. ) | No.:_____ |

## **COMPLAINT**

1.      This is an action to challenge the constitutionality of New Mexico's unique two-tier ballot access scheme for minor political parties, which requires that each candidate of a qualified minor party submit a separate petition to qualify for the general election ballot.  Plaintiffs seek declaratory and injunctive relief prohibiting Defendants from enforcing this statutory scheme as applied to them in the 2026 general election.  Plaintiffs also seek an injunction requiring Defendants to place on the ballot those nominees of the New Mexico Forward Party who were denied access to the ballot by operation of the statutory provisions challenged herein.

### **JURISDICTION AND VENUE**

2.      This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) because Plaintiffs' claims arise under the United States Constitution.

1

3.      This suit is authorized by 42 U.S.C. § 1983 because Plaintiffs seek redress for the deprivation of their rights under color of state law.

4.      The declaratory relief and further relief requested is authorized by 28 U.S.C. §§ 2201 and 2202.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants are state and local officials of New Mexico and reside in New Mexico.

**PARTIES**

6.      Plaintiff New Mexico Forward Party ("NMFP") is a "minor political party" within the meaning of New Mexico Statutes § 1-7-7(B).[1] NMFP seeks to qualify candidates for the ballot in local, state and federal elections in New Mexico, to grow and develop as a political party, to provide competition and voter choice in New Mexico's many non-competitive elections and to promote and build support for its platform among New Mexico voters.  It maintains a business address at P.O. Box 507, Corrales, New Mexico, 87048.

7.      Plaintiff Bob Perls is Chair of NMFP and NMFP's nominee for United States Senate in the 2026 general election.  He resides in Sandoval County, New Mexico, where he is a registered voter, and intends to remain and vote in future elections.  Perls seeks to run for public office as a candidate of NMFP and to campaign for, speak and associate with and vote for NMFP's candidates, and he is harmed by their exclusion from New Mexico's general election ballot.

8.      Plaintiff Michael Vigil is NMFP's nominee for New Mexico State Auditor in the 2026 general election.  He resides in Bernalillo County, New Mexico, where he is a registered voter, and intends to remain and vote in future elections.  Vigil seeks to run for public office as a

---

[1] Hereinafter all statutory citations are to the New Mexico Statutes unless otherwise indicated.

2

candidate of NMFP and to campaign for, speak and associate with and vote for NMFP's candidates, and he is harmed by their exclusion from New Mexico's general election ballot.

9. Plaintiff Dennis Dinge is NMFP's State Secretary and NMFP's nominee for Public Education Commission District 3 in the 2026 general election. He resides in Bernalillo County, New Mexico, where he is a registered voter, and intends to remain and vote in future elections. Dinge seeks to run for public office as a candidate of NMFP and to campaign for, speak and associate with and vote for NMFP's candidates, and he is harmed by their exclusion from New Mexico's general election ballot.

10. Plaintiff Harry Montoya is a member of NMFP and NMFP's nominee for Santa Fe County Magistrate Judge in the 2026 general election. He resides in Santa Fe County, New Mexico, where he is a registered voter, and intends to remain and vote in future elections. Montoya seeks to run for public office as a candidate of NMFP and to campaign for, speak and associate with and vote for NMFP's candidates, and he is harmed by their exclusion from New Mexico's general election ballot.

11. Plaintiff Frances Kava is NMFP's nominee for Luna County Magistrate Judge in the 2026 general election. She resides in Luna County, New Mexico, where she is a registered voter, and intends to remain and vote in future elections. Kava seeks to run for public office as a candidate of NMFP and to campaign for, speak and associate with and vote for NMFP's candidates, and she is harmed by their exclusion from New Mexico's general election ballot.

12. Defendant Maggie Toulouse Oliver is the Secretary of State of the State of New Mexico ("the Secretary"). The Secretary is New Mexico's chief elections official and is responsible for administering and enforcing the New Mexico Election Code, including the provisions challenged herein. The Secretary's business address is New Mexico Secretary of State,

325 Don Gaspar, Suite 300, Santa Fe, New Mexico, 87501.  Secretary Toulouse Oliver is sued in her official capacity only.

13.    Defendant Barbara DeLaney is the County Clerk of Luna County, New Mexico. The County Clerk is Luna County's chief elections official and is responsible for administering and enforcing the New Mexico Election Code, including the provisions challenged herein as applied to candidates for countywide offices.  The County Clerk's business address is Luna County Clerk's Office, 700 S. Silver Ave., Box 7, Deming, New Mexico, 88030.  County Clerk DeLaney is sued in her official capacity only.

## FACTUAL ALLEGATIONS

### I.    Ballot Access Requirements Under the New Mexico Election Code

14.    New Mexico is the only state in the nation that requires the candidates of a minor political party that has successfully qualified by petition to submit their own individual petitions for placement on the general election ballot.  This two-petition requirement has been in effect since 1979.

15.    To place its candidates on New Mexico's general election ballot, a new political party must first petition for recognition as a qualified political party.  *See* § 1-7-2(A).  The petition must be signed by registered voters equal in number to 0.5 percent of the total vote in the preceding election for Governor.  *See id.*

16.    The petition required by § 1-7-2(A) must be submitted within 30 days after the party's organization and no later than 23 days after New Mexico's primary election day.  *See* § 1-7-4(A).  A new party that complies with these requirements becomes a qualified "minor political party."  *See* § 1-7-4(B); § 1-7-7(B).  The Secretary of State must notify the new party whether it successfully qualified within seven days.  *See* § 1-7-4(B).

4

17. A qualified minor political party is not entitled to place its nominees on the general election ballot unless each candidate (except for President and Vice President) timely submits a petition with the required number of signatures. *See* § 1-8-1(B); § 1-8-2. The petitions required of each candidate must be submitted within 23 days after New Mexico's primary election day— *i.e.*, on the last day that the new party may submit the petition required by § 1-7-2(A). *See* §§ 1-8-2(A), (B).

18. A new party's candidates also must become members of the party no later than the date on which the party files its petition pursuant to § 1-7-2(A). *See* § 1-8-2(E)(1). The candidates therefore must join the party before they know whether it will become qualified.

19. The number of signatures a minor party candidate's petitions must contain varies depending on the party's size. If the party's registered members statewide (for candidates for statewide office) or in the district in which the candidate runs (for candidates for offices other than statewide office) are no less than 1 percent of the total number of votes for Governor in the preceding election in that jurisdiction, then its candidates' petitions must contain signatures totaling at least 1 percent of the total vote cast in the preceding election for Governor within that jurisdiction. *See* §§ 1-8-2(B)(1), (2). If the party's members within the relevant jurisdiction equal less than 1 percent of the total vote cast in the preceding election for Governor within that jurisdiction, then its candidates' petitions must contain signatures totaling at least 2 percent of the total vote cast in the preceding election for Governor within that jurisdiction. *See* §§ 1-8-2(B)(1), (2); §§ 1-8-51(C), (D), (E).

20. Minor party candidates must submit nomination petitions "on forms prescribed by law." *See* § 1-8-65(B). The Secretary of State is required to post the nomination petition form on

its website and to furnish it to county clerks in March of even-numbered years—that is, the year in which the candidate seeks to qualify for the general election ballot. *See* § 1-8-65(D).

21. The primary election is held on the first Tuesday after the first Monday in June. *See* § 1-8-11.

22. Under New Mexico law, a "major political party" is any qualified political party that had a candidate who received as many as five percent of the total number of votes cast at the last preceding general election for the office of governor or president of the United States, and whose membership totals not less than one-third of one percent of statewide registered voters. *See* § 1-7-7(A).

23. Major parties nominate their candidates in the primary election. *See* § 1-8-1(A). Major parties can designate candidates for placement on the primary election ballot by holding a vote at convention; each candidate who receives at least 20 percent of the vote qualifies for placement on the primary election ballot. *See* § 1-8-21.1.

24. Major party candidates can also qualify for the primary election ballot by submitting petitions and declarations of candidacy. *See* §§ 1-8-21(A), (B).

25. For statewide office, major party candidates' petitions must contain signatures from party members equal to 3 percent of the total vote in the party's preceding primary election for Governor. *See* § 1-8-33(C).[2] Candidates for other offices are subject to lesser requirements. *See id*.

26. Major party candidates' petitions and declarations must be filed on the second Tuesday of March in even-numbered years. *See* § 1-8-26(B).

---

[2] The Candidate Information Guide published by the Secretary states, apparently erroneously, that major party candidates are subject to a 2 percent signature requirement. *See* New Mexico Secretary of State, *2026 Candidate Information Guide*, at 30, *available at* https://www.sos.nm.gov/candidate-and-campaigns/how-to-become-a-candidate/2026-elections-candidate-information/ (accessed July 10, 2026).

27.    Like minor party candidates, major party candidates must circulate a nomination petition form prepared by the Secretary of State. *See* §§ 1-8-30(A), (B).  Unlike the nomination petition form for minor party candidates, which is not available until March of the election year, *see* § 1-8-65(D), the Secretary of State must post the major party nomination form online and make it available in October of the preceding year. *See* § 1-8-30(D).

**II.    New Mexico's Ballot Access Requirements Impose Severe and Unequal Burdens on Minor Political Parties and Their Candidates, Including Plaintiffs**

28.    New Mexico is the only state that imposes a petitioning requirement on each candidate of a qualified minor party.  Maryland previously did, but its statutory scheme was struck down under the state Constitution. *See Maryland Green Party v. Maryland Bd. of Elections*, 832 A.2d 214, 231 (Md. 2003) (holding that Maryland's "two-tiered petitioning requirement for minor parties discriminates against minor political parties in violation of the equal protection component of Article 24 of the Maryland Declaration of Rights.").  A major party candidate, the Court reasoned, "does not have to show any personal 'modicum of support' to be on the general election ballot; the 'modicum of support' is the prior support of the party itself." *Id.* at 232-33.  By contrast, for a minor party candidate, "the requisite 1% showing of support is *in addition* to the initial showing of support which the minor political party has already demonstrated upon submitting its party-forming petition." *Id*. at 233 (emphasis original).

29.    In New Mexico, a newly qualified minor political party and its candidates are in precisely the same position that minor parties and their candidates were in Maryland before its two-tiered statutory scheme was struck down.  Like the additional petitioning requirement that Maryland imposed on individual candidates of minor parties, the additional petitioning requirement that New Mexico imposes on individual candidates of minor parties is wholly

unnecessary to protect any legitimate state interest. It serves only to erect a drastic barrier against minor parties' participation in New Mexico's electoral process.

30. There were 712,256 total votes in New Mexico's last election for Governor in 2022. *See* New Mexico Secretary of State, *2022 Nov. 8 General, Governor*, available at https://electionstats.sos.nm.gov/contest/11090 (accessed July 8, 2026). To qualify in 2026, therefore, NMFP was required to submit a petition with 3,561 signatures of New Mexico voters. *See* § 1-7-2(A).

31. NMFP's party petition was due within 30 days of its organization and no later than 23 days after New Mexico's primary election. NMFP's organizing event was held on April 10, 2026, when a national Forward Party co-founder, Andrew Yang, visited New Mexico to publicize and launch the state party. *See* §§ 1-7-4(A); 1-8-11. The primary election was held on June 2, 2026; NMFP's party petition was therefore due no later than June 25, 2026. *See id.*

32. NMFP timely filed its party petition on May 8, 2026. The petition contained approximately 5,500 signatures, and the Secretary notified NMFP that it was a qualified minor political party on or about May 14, 2026.

33. NMFP and any candidates seeking to run as its nominees faced an initial quandary. Pursuant to § 1-8-2(B), such candidates were required to submit their petitions on June 25, 2026, but pursuant to § 1-8-2(E)(1), the petitions would not be valid unless the candidates had registered with NMFP on or before May 8, the date on which NMFP submitted its party petition. The candidates were therefore required to change their voter registration to NMFP before they knew whether NMFP would be a qualified party in the 2026 election cycle. *See* §§ 1-8-2(B), (E)(1).

34. The next challenge facing NMFP's candidates is the onerous signature requirements imposed by § 1-8-2(B). As calculated by the Secretary for purposes of the 2026

general election, 1 percent of the total vote for Governor in the preceding election equals 7,100, and 2 percent equals 14,200. *See* New Mexico Office of the Secretary of State, *2026 Nominating Petition for Minor Parties and Decline to State (Independent) Candidates Calculations* ("Petition Calculations"), at 2, available at https://www.sos.nm.gov/wp-content/uploads/2026/04/2026-Nominating-Petition-Calculations-for-Minor-Parties-and-Independent.pdf (accessed July 8, 2026). Pursuant to §§ 1-8-2(B)(1) and (2), therefore, if a minor party has more than 7,100 registered members statewide, then its candidates for statewide office must submit petitions containing 7,100 signatures, but if it has fewer than 7,100 registered members statewide, then its candidates for statewide office must submit petitions containing 14,200 signatures.

35. It was practically impossible for NMFP to register 7,100 members by June 25, 2026, the date on which NMFP's candidates' petitions were due, because NMFP was not certified as a qualified minor party until May 14, just six weeks prior. Additionally, voters could not change their registration to NMFP online from May 5, 2026 until June 8, 2026 because the New Mexico Online Voter Registration Portal was unavailable during that period. *See* New Mexico Secretary of State, *New Mexico Online Voter Registration*, available at https://portal1.sos.nm.gov/OVR/(S(t3rg3zgdnlxq4r3qndopojdq))/WebPages/InstructionsStep1.aspx (accessed July 12, 2026).

36. As a qualified minor party with fewer than 7,100 members, NMFP's candidates for statewide office were required to submit petitions with 14,200 signatures. *See* §§ 1-8-2(B)(1), (2).

37. The Secretary of State's Petition Calculations, *supra*, do not specify the signature requirements applicable to a newly qualified minor party like NMFP, and only include the signature requirements applicable to minor parties that meet the membership threshold set forth in § 1-8-2(B)(1), as well as the signature requirements for independent candidates—which is the

9

requirement that NMFP candidates must meet pursuant to § 1-8-2(B)(1). *See* Petition Calculations at 2-11.

38.    NMFP repeatedly sought clarification from the Secretary's office, via written requests, to determine whether its candidates were required to comply with the signature requirements applicable to minor parties, or to independent candidates. The Secretary's General Counsel confirmed in writing that NMFP's candidates must meet the requirements that apply to independent candidates.

39.    As specified by § 1-8-2(B)(1), to run a full slate of candidates for statewide office, a newly qualified party like NMFP that has fewer than 7,100 members was required to meet the higher signature requirement applicable to independent candidates, as follows:

| | |
|---|---|
| United States Senate: | 14,200 |
| Governor: | 14,200 |
| Lieutenant Governor: | 14,200 |
| Secretary of State: | 14,200 |
| Attorney General: | 14,200 |
| State Auditor: | 14,200 |
| State Treasurer: | 14,200 |
| Commissioner of Public Lands: | 14,200 |
| Court of Appeals Judge: | 14,200 |

That is a total of 127,800 signatures required for NMFP to qualify its candidates for all statewide offices in New Mexico. Together with the new party petition NMFP itself was required to submit with 3,561 signatures, NMFP needed to submit 10 separate petitions with 131,361 total signatures to qualify its candidates for all statewide offices. But even if NMFP complied with that

requirement, as onerous as it is, it still would not be permitted to run any candidates for the hundreds more offices for state legislature, judicial office, public education commissioner and county office unless its candidates submitted separate petitions for each of those offices. *See* Petition Calculations, *supra*, at 2-11.

40. On its face, New Mexico's statutory scheme makes it practically impossible for a new party to become qualified to run candidates for federal, state and local offices.

41. Even if NMFP were subject to the signature requirements applicable to minor parties—and as a newly qualified party with fewer than 7,100 members, it is not, *see* § 1-8-2(B)(1)—it would still need to submit 10 separate petitions with a total of 67,461 signatures to run a full slate of statewide candidates. Its candidates for the hundreds of other offices on the general election ballot would also be required to submit separate petitions.

42. New Mexico's candidate petition signature requirements—whether for a newly qualified minor party like NMFP that must comply with the "independent" requirement or for a minor party with enough members that it must comply with the "minor party" requirement, *see* § 1-8-2(B)(1)—impose grossly excessive burdens on minor parties and their candidates. Yet the candidate petitions are not needed to further any legitimate state interest at all. *See Maryland Green Party*, 832 A.2d at 231-33.

43. New Mexico also imposes undue restrictions on petitioning by minor parties and their candidates. NMFP's candidates were required to submit their petitions on or before June 25, 2026, *see* § 1-8-2(B), but under New Mexico law the petition forms the candidates were required to use are not made available until March. *See* § 1-8-65. Furthermore, although the Secretary was permitted to make the petition forms available on March 1, 2026, the Secretary did not do so until on or about March 29, 2026. That would have given NMFP's candidates less than three months

11

to circulate petitions to comply with their signature requirements. But NMFP's candidates could not start petitioning until NMFP completed its petition and the Secretary certified it as a qualified party, which did not occur until May 14, 2026. As a result, NMFP candidates had just 41 days to circulate their petitions.

44.    The onerous signature requirements and short petitioning periods that New Mexico imposes on NMFP and its candidates stand in sharp contrast with the procedures it has adopted for major party candidates. Major party candidates may be designated for placement on the primary election ballot by a vote at convention. *See* § 1-8-21.1. Such candidates also may qualify by petition, but whereas NMFP's candidates for statewide office were required to meet a signature requirement of 14,200, candidates for statewide office seeking access to the Democratic Party or Republican Party primary ballot needed only 2,505 signatures, or 2,351 signatures, respectively. *See* New Mexico Secretary of State, *2026 Candidate Information Guide*, at 30, *available at* https://www.sos.nm.gov/candidate-and-campaigns/how-to-become-a-candidate/2026-elections-candidate-information/ (accessed July 10, 2026). Plaintiffs Perls and Vigil, NMFP's two statewide candidates, exceeded these major party signature requirements.

45.    Additionally, while major party candidates need only a fraction of the signatures required of NMFP's candidates, New Mexico law affords them nearly twice the time to obtain them. The petition forms major party candidates circulate must be made available in October of the year prior to the primary election for which they seek to qualify. *See* § 1-8-30(D). In 2026, the petitions were due on or before March 10, 2026. *See* § 1-8-30(D). Major party candidates are thus permitted to circulate their petitions for approximately 5-1/2 months, depending on when in October the Secretary makes the petition forms available. Unlike the petition form NMFP was required to use, which was unavailable until nearly the last day the Secretary was statutorily

permitted to post it, the Secretary posted the major party petition form on or about October 1, 2025—the first day the Secretary was permitted to make it available.

46. To its credit, New Mexico has implemented an electronic petitioning platform that enables voters to sign candidates' nomination petitions online. *See* New Mexico Secretary of State, *Sign A Petition*, available at https://www.electronicpetitions.elections.sos.nm.gov/ (accessed July 10, 2026). Due to the shortness of time, NMFP and its candidates planned to rely on the platform to gather their signatures, by using social media, email and other communications to encourage their supporters to sign their petitions online. They were largely unable to do so, however, because the platform was not functional for NMFP candidates during the majority of their petitioning period—specifically, the Secretary deactivated the platform from May 5, 2026 – June 8, 2026— and it did not become functional for NMFP's candidates until up to two weeks after that. Even then, many voters were unable to use it due to technical errors that prevented them from signing NMFP's candidates' petitions.

47. NMFP and its candidates spent almost $63,000 to promote candidates' petition drives. Of this, NMFP spent approximately $11,000 hiring petition circulators and paying for the materials and supplies necessary to gather voters' wet signatures at public events. NMFP spent over $44,500 promoting candidates' petitions in text message campaigns asking supporters to sign petitions through New Mexico's electronic petitioning platform. Additionally, individual candidates collectively spent approximately $7,245 on their text messaging campaigns and field operations to gather signatures for their own petitions.

48. Plaintiff Perls is NMFP's candidate for United States Senate and was therefore required to submit a petition with 14,200 signatures. NMFP spent approximately $19,900 of its text messaging budget and Perls spent another $750 to fund his petition drive. More than 450,000

texts were sent to registered voters which produced over 11,300 "click-throughs" but less than 300 completed signatures.[3]   New Mexico's electronic petitioning platform was not functional for Perls's campaign until June 12, and thereafter, voters contacted Perls or NMFP to report that technical errors often prevented them from using it to sign his petition.  Perls also sent two email blasts to approximately 5,000 of his own personal and political contacts, which produced only approximately 200 signatures through the platform.  NMFP's field operations budget also helped fund Perls's petition drive through the paid petition circulators who gathered wet signatures on paper petitions at public events.  Perls timely submitted approximately 2,700 signatures— approximately 2,100 on paper petitions and 600 more through the platform—and on June 30, 2026, the Secretary notified him that he did not qualify for New Mexico's 2026 general election ballot. The Secretary's notification erroneously stated that Perls was required to submit 7,100 signatures pursuant to § 1-8-2, when in fact he was required to submit 14,200.

49.    Plaintiff Vigil is NMFP's candidate for State Auditor and was therefore required to submit a petition with 14,200 signatures.   NMFP spent approximately $24,600 of its text messaging budget to fund Vigil's petition drive.  Close to 590,000 texts were sent to registered voters which produced almost 34,000 click-throughs but less than 1,500 completed signatures. New Mexico's electronic petitioning platform was not functional for Vigil's campaign until June 12, and thereafter, voters contacted Vigil or NMFP to report that technical errors often prevented them from using it to sign his petition.  NMFP's field operations budget also helped fund Vigil's petition drive through the paid petition circulators who gathered wet signatures on paper petitions at public events.  Vigil timely submitted approximately 4,400 signatures—approximately 2,700 on

---

[3] A "click-through" is a tracked interaction recorded by the messaging platform when a text message recipient clicks or taps the petition link in the message. A click-through indicates the recipient followed the link to the Secretary of State's electronic petition platform; it does not mean the voter successfully submitted an electronic signature.

14

paper petitions and 1,770 more through the platform—and on June 30, 2026, the Secretary notified him that he did not qualify for New Mexico's 2026 general election ballot. The Secretary's notification erroneously stated that Vigil was required to submit 7,100 signatures pursuant to § 1-8-2, when in fact he was required to submit 14,200.

50. Plaintiff Dinge is NMFP's candidate for Public Education Commission District 3 and was therefore required to submit a petition with 1,014 signatures. NMFP's field operations budget helped fund Dinge's petition drive through the paid petition circulators who gathered wet signatures on paper petitions at public events. Dinge also personally spent approximately $4,000 to fund his petition drive. These funds were dedicated to promoting his petition drive on social media and text message campaigns asking supporters to sign his petition through New Mexico's electronic petitioning platform. That platform was not functional for Dinge's campaign until June 15, and thereafter, voters contacted Dinge or NMFP to report that technical errors often prevented them from using it to sign his petition. More than 80,000 texts were sent to registered voters, generating nearly 8,300 click-throughs and about 200 completed signatures. Dinge timely submitted approximately 1,230 signatures—approximately 1,000 on paper petitions and over 220 through the platform—and on June 30, 2026, the Bernalillo County Clerk notified him that he qualified for New Mexico's 2026 general election ballot.

51. Plaintiff Montoya is NMFP's candidate for Santa Fe County Magistrate Judge and was therefore required to submit a petition with 928 signatures. Montoya personally spent approximately $1,945 to fund his petition drive. Of these funds, $300 was dedicated to promoting his petition through his own local field operations and over $1,600 was spent on a text message campaign asking supporters to sign his petition through New Mexico's electronic petitioning platform. That platform was not functional for Montoya's campaign until June 22. Over 41,000

texts were sent to registered voters, generating almost 1,800 click-throughs and only about 30 completed signatures. Montoya timely submitted 984 signatures—almost all of which were on paper petitions because the platform was functional for only two days of his petitioning period—and on June 30, 2026, the Santa Fe County Clerk notified him that he qualified for New Mexico's 2026 general election ballot.

52.    Plaintiff Kava is NMFP's candidate for Luna County Magistrate Judge and was therefore required to submit a petition with 59 signatures.  Kava spent approximately $550 on her petition drive, and primarily relied on herself and volunteers to collect signatures.  Kava personally dedicated approximately 48 hours to the effort and her volunteers dedicated another 40 hours, collecting both wet and electronic signatures primarily through their own personal networks. Kava's campaign expenses included $200 spent on sending more than 3,500 texts to registered voters, generating almost 1,200 click-throughs but only about 15 completed signatures. Kava timely submitted 118 signatures—approximately 70 on paper petitions and about 50 electronic signatures even though the platform was not functional for Kava until June 13—and on June 30, 2026, the Luna County Clerk (Defendant DeLaney) notified her that she did not qualify for New Mexico's 2026 general election ballot.  Although Kava met the signature requirement, Defendant DeLaney stated that Kava was disqualified because she failed to register with NMFP on May 8, 2026, "which was the date the Secretary of State qualified the New Mexico Forward Party."  In fact, the Secretary qualified NMFP on or about May 14, 2026.

53.    Pursuant to § 1-8-2(E)(1), both Plaintiff Montoya and Plaintiff Kava were required to register as a member of NMFP on or before May 8, 2026.  Neither Montoya nor Kava did. Nevertheless, the Santa Fe County Clerk recognized Montoya as qualified to appear on the

county's general election ballot, but Defendant DeLaney notified Kava that she did not qualify because she failed to comply with § 1-8-2(E)(1).

54.    NMFP and its candidates spent close to $63,000 for a large, sophisticated field operation and digital outreach program intended to leverage New Mexico's online petitioning platform.  Nearly 1.166 million text messages were sent out to more than 500,000 registered New Mexico voters, generating more than 56,000 click-throughs to NMFP candidates' electronic petitions—yet fewer than 2,700 total electronic signatures were completed through the online platform because it was not functional for the majority of the limited period during which New Mexico permitted NMFP's candidates to circulate petitions.

55.    Despite these efforts and the funds and resources dedicated to them, NMFP was unable to qualify a single candidate for statewide office, and qualified just one candidate for Public Education Commission and one candidate for magistrate judge.

## III.    No Legitimate or Compelling State Interest Justifies New Mexico's Onerous Ballot Access Requirements.

54.    In recent decades, New Mexico has never had an overcrowded ballot.  It has never had any regulatory problems because too many candidates were able to qualify.  The opposite is true.

55.    Since 2000, in all races for each state and federal office except President, New Mexico has never had more than four candidates qualify to appear on its general election ballot.  Only one race since 2000 had as many as four candidates qualify for the general election ballot.  Every other race had three candidates or fewer.  *See generally* New Mexico Secretary of State, *Election Results*, available at https://www.sos.nm.gov/voting-and-elections/election-results/ (accessed July 6, 2026).

17

56.     Presidential elections are an exception because New Mexico imposes no petitioning requirement on candidates for President and Vice President.  Any qualified political party can place its presidential ticket on New Mexico's general election ballot just by nominating them at a convention and notifying the Secretary of State.  *See* § 1-15-3.

57.     Despite imposing no petitioning requirement on qualified parties' candidates for President and Vice President, New Mexico has not had an overcrowded ballot in presidential elections in recent decades.  Counting the Democratic Party and Republican Party nominees, New Mexico's general election ballot in presidential elections has included the following number of tickets: in 2024, 7; in 2020, 6; in 2016, 8; in 2012, 6; in 2008, 6; in 2004, 6; in 2000, 7; and in 1996, 7.  *See generally* New Mexico Secretary of State, *Election Results*, available at https://www.sos.nm.gov/voting-and-elections/election-results/ (accessed July 6, 2026).

58.     New Mexico regularly has elections with only one candidate running unopposed. That is true of a *majority* of state legislative races in almost every election cycle for the last two decades: only one candidate appeared on the ballot running unopposed.[4]

59.     In presidential election years, when New Mexico has a total of 112 state legislative races (for State House and State Senate), at least 224 candidates would need to qualify for the ballot to ensure that every race provided voters with a choice between at least two candidates.  That has not happened for more than 20 years.

60.     In 2004, 67 state legislative candidates ran unopposed, meaning only one candidate qualified for the general election ballot in 59.82 percent of state legislative races.

61.     In 2008, 70 state legislative candidates ran unopposed, meaning only one candidate qualified for the general election ballot in 62.50 percent of state legislative races.

---

[4] The figures reported exclude write-in candidates.  *See Anderson v. Celebrezze*, 460 U.S. 780, 799 n.26 (1983) (Write-in voting "is not an adequate substitute for having the candidate's name appear on the printed ballot.").

62.     In 2012, 56 state legislative candidates ran unopposed, meaning only one candidate qualified for the general election ballot in 50 percent of state legislative races.

63.     In 2016, 67 state legislative candidates ran unopposed, meaning only one candidate qualified for the general election ballot in 59.82 percent of state legislative races.

64.     In 2020, 29 state legislative candidates ran unopposed, meaning only one candidate qualified for the general election ballot in 25.89 percent of state legislative races.

65.     In 2024, 64 state legislative candidates ran unopposed, meaning only one candidate qualified for the general election ballot in 57.14 percent of state legislative races.

66.     In midterm years, when New Mexico has a total of 70 state legislative races (for State House only), at least 140 candidates would need to qualify for the ballot to ensure that every race provided voters with a choice between at least two candidates.  That has not happened for more than 20 years.

67.     In 2002, 35 state legislative candidates ran unopposed, meaning only one candidate qualified for the general election ballot in 50 percent of state legislative races.

68.     In 2006, 39 state legislative candidates ran unopposed, meaning only one candidate qualified for the general election ballot in 55.71 percent of state legislative races.

69.     In 2010, 37 state legislative candidates ran unopposed, meaning only one candidate qualified for the general election ballot in 52.86 percent of state legislative races.

70.     In 2014, 36 state legislative candidates ran unopposed, meaning only one candidate qualified for the general election ballot in 51.43 percent of state legislative races.

71.     In 2018, 33 state legislative candidates ran unopposed, meaning only one candidate qualified for the general election ballot in 47.14 percent of state legislative races.

72.    In 2022, 30 state legislative candidates ran unopposed, meaning only one candidate qualified for the general election ballot in 42.86 percent of state legislative races.

73.    In all state legislative races from 2002–2024, there has never been more than three candidates on the ballot.

74.    The Supreme Court has opined that ballots including "a dozen or more" candidates for a single office might be problematic.  *See Lubin v. Panish*, 415 U.S. 709, 715-16 (1974).  But "the presence of eight candidacies [for a single office] cannot be said, in light of experience, to carry a significant danger of voter confusion." *Williams v. Rhodes*, 393 U.S. 23, 47 (1968) (Harlan, J., concurring) ("As both Ohio's electoral history and the actions taken by the overwhelming majority of other States suggest, opening the ballot to this extent is perfectly consistent with the effective functioning of the electoral process.").

75.    Many states frequently accommodate more than 10 candidates on their primary election ballots.  In 2020 alone, the Democratic Party's presidential primary ballot included more than 10 candidates in 29 states: Alabama (14 candidates); Arizona (12 candidates); Arkansas (18 candidates); California (20 candidates); Colorado (13 candidates); Florida (16 candidates); Georgia (12 candidates); Idaho (17 candidates); Illinois (12 candidates); Louisiana (14 candidates); Maine (12 candidates); Maryland (14 candidates); Massachusetts (15 candidates); Michigan (15 candidates); Minnesota (15 candidates); Missouri (22 candidates); New Hampshire (33 candidates); New York (11 candidates); North Carolina (15 candidates); Oklahoma (14 candidates); South Carolina (12 candidates); Tennessee (15 candidates); Texas (17 candidates); Utah (15 candidates); Vermont (13 candidates); Virginia (14 candidates); Washington (13 candidates); West Virginia (12 candidates); and Wisconsin (12 candidates). *See* Federal Election Commission, *2020 Presidential Primary Election Results*, available at

https://www.fec.gov/resources/cms-content/documents/federalelections2020.pdf (accessed July 6, 2026).

76.     In New Mexico, by contrast, in the last two decades fewer than two candidates, on average, qualified for the general election ballot in each state legislative race.  The results are similar for New Mexico's elections for U.S. House and U.S. Senate.  From 2002 to 2024, there have been 44 such races, in which a collective total of only 93 candidates ran.  In almost all of these races, therefore, just two candidates qualified for the ballot.  And in New Mexico's elections for statewide state offices, the pattern holds true: from 2002 to 2024, there were 65 such races in which a collective total of only 135 candidates qualified for the ballot.  Once again, in almost all of these races, just two candidates qualified for the ballot.

**IV.     New Mexico's Statutory Scheme Is Unconstitutional Under Existing Supreme Court Precedent**

77.     New Mexico's undue restrictions on petitioning—it allows minor party candidates less than three months to circulate their nomination petitions—violate the First Amendment. *See Meyer v. Grant*, 486 U.S. 414, 422, 425 (1988).  New Mexico's statutory scheme also operates as an exclusionary mechanism that denies voters, including Plaintiffs, the right to cast their votes for candidates of their choosing. *See American Party of Texas v. White*, 415 U.S. 767, 794 (1974).  It severely burdens Plaintiffs' right to cast their votes effectively, to speak and associate for political purposes, and to the equal protection of law, and it is not reasonably tailored to further a sufficiently weighty state interest, given the availability of less burdensome alternatives. *See Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).  As applied to Plaintiffs, New Mexico's statutory scheme is unconstitutional.

## CAUSES OF ACTION

## COUNT I

**(Violation of Plaintiffs' Rights Guaranteed by the First and Fourteenth Amendments)**

78.     Plaintiffs reassert each preceding allegation as if set forth fully herein.

79.     New Mexico prohibits minor party candidates from petitioning until March of the year in which they seek to qualify for the ballot.  *See* §§ 1-8-65(A), (B), (D).

80.     Sections 1-8-65(A), (B), and (D) are not merely a time-limitation on petitioning but a categorical prohibition on the exercise of First Amendment rights.  The provisions prevent candidates from engaging in what the Supreme Court has recognized as "core political speech"— the circulation of nomination petitions to express support for a candidacy and to associate with like-minded voters.  *Grant*, 486 U.S. at 421–22.

81.     This prohibition is both content-based and speaker-based: it applies to speech in support of minor party candidacies, while New Mexico permits identical speech in support of major party candidacies for nearly twice the length of time.  It is also viewpoint-discriminatory insofar as it suppresses speech advocating political alternatives to the two major parties during the critical months when those parties are actively soliciting voters' support in their primary elections.

82.     As applied to Plaintiffs, §§ 1-8-65(A), (B), (D) prohibited them from circulating nomination petitions in support of their candidates except for the statutorily prescribed period that began on or about March 29, 2026 and ended June 25, 2026.

83.     Sections 1-8-65(A), (B), (D), as applied separately and in conjunction with the other statutory provisions challenged herein, both cause injury to and violate rights guaranteed to Plaintiffs by the First and Fourteenth Amendments to the U.S. Constitution.

## COUNT II

**(Violation of Plaintiffs' Rights Guaranteed by the First and Fourteenth Amendments)**

84.     Plaintiffs reassert each preceding allegation as if set forth fully herein.

22

85.     New Mexico imposes severely burdensome requirements and restrictions on minor parties and their candidates that seek access to its general election ballot.

86.     Specifically, minor parties and their candidates must:

(a)     Submit a petition to become a qualified minor party containing signatures equal to one-half of one percent of the total vote for Governor in the preceding election, *see* § 1-7-2(A);

(b)     Recruit candidates to join the party before the party is qualified, and any candidates who do not are ineligible to be the party's nominee, *see* § 1-8-2(E);

(c)     After the minor party qualifies, each candidate must submit a separate petition to qualify for the general election ballot within 23 days of the primary election, *see* § 1-8-2(B);

(d)     If the minor party's membership is equal to at least 1 percent of the total vote for Governor statewide (for candidates for statewide office) or in the candidate's district (for other offices), then the candidate's petition must contain signatures equal to at least 1 percent of the total vote for Governor in the preceding election, *see* § 1-8-2(B)(1);

(e)     If the minor party's membership is equal to less than 1 percent of the total vote for Governor statewide (for candidates for statewide office) or in the candidate's district (for other offices), then the candidate's petition must contain signatures equal to at least 2 percent of the total vote for Governor in the preceding election, *see* § 1-8-2(B)(1); and

(f)     Minor party candidates may not begin circulating petitions to qualify for the general election ballot until the Secretary makes the petition forms available in March of the election year, *see* §§ 1-8-65(A), (B), (D).

87.     The statutory provisions in the preceding paragraph, operating separately and in conjunction with one another, impose substantial or severe burdens on minor party candidates and on voters who support or may wish to support them, which are not justified by any legitimate or compelling state interest.

88.     These provisions, as applied separately and in conjunction with one another, both cause injury to and violate rights guaranteed to Plaintiffs by the First and Fourteenth Amendments to the U.S. Constitution.

## COUNT III

### (Violation of Plaintiffs' Rights Guaranteed by the Equal Protection Clause)

89.     Plaintiffs reassert each preceding allegation as if set forth fully herein.

90.     New Mexico's ballot access requirements for minor party candidates, and specifically those statutory provisions enumerated in Count I and Count II of this Complaint, as applied separately and in conjunction with one another, both cause injury to and violate rights guaranteed to Plaintiffs by the Equal Protection Clause of the U.S. Constitution.

## PRAYER FOR RELIEF

91.     WHEREFORE, Plaintiffs respectfully request that the Court:

A.     Enter a declaratory judgment holding that §§ 1-8-65(A), (B), (D), which prohibit minor party candidates from petitioning until March of the year in which they seek to qualify for the general election ballot, violate the First Amendment;

B.     Enter a declaratory judgment holding that New Mexico's statutory scheme regulating ballot access for minor party candidates is unconstitutional as applied to Plaintiffs, and that the following statutory provisions are unconstitutional as applied separately and in conjunction with one another: §§ 1-7-2(A); 1-8-2(B); 1-8-2(B)(1); 1-8-2(E); and 1-8-65(A), (B), (D).

C.     Enter an order enjoining the Secretary and County Clerk DeLaney from enforcing the challenged provisions as applied to Plaintiffs;

D.     Award other and further relief as the Court deems proper, including such relief as may be necessary to ensure the placement of Plaintiff Perls, Plaintiff Vigil and Plaintiff Kava on New Mexico's 2026 general election ballot as Plaintiff NMFP's candidates for United States Senator, State Auditor and Luna County Magistrate Judge, respectively;

E.     Award litigation costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

F.     Retain jurisdiction of this action and grant the Plaintiffs any further relief which may in the discretion of the Court be necessary and proper.

Dated: July 14, 2026                                    Respectfully submitted,


                                                        WESTERN AGRICULTURE, RESOURCE
                                                        AND BUSINESS ADVOCATES, LLP

                                                        */s/ A. Blair Dunn*
                                                        A. Blair Dunn, Esq.
                                                        Jared R. Vander Dussen, Esq.
                                                        400 Gold Ave SW, Suite 1000
                                                        Albuquerque, NM 87102
                                                        (505) 750-3060
                                                        ABDunn@ABlairDunn-Esq.com
                                                        warba.llp.jared@gmail.com


                                                        Oliver B. Hall
                                                        *Pro hac vice* (motion forthcoming)
                                                        CENTER FOR COMPETITIVE DEMOCRACY
                                                        P.O. Box 21090
                                                        Washington, DC 20009
                                                        (202) 248-9294
                                                        oliverhall@competitivedemocracy.org


25