**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

|  |  |
|---|---|
| NEW MEXICO FORWARD PARTY, BOB PERLS, MICHAEL VIGIL, DENNIS DINGE, HARRY MONTOYA and FRANCES KAVA, <br><br> Plaintiffs, <br><br> v. <br><br> MAGGIE TOULOUSE OLIVER, in her official capacity as Secretary of State of New Mexico, and BARBARA DELANEY, in her official capacity as County Clerk of Luna County, New Mexico, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  No.: <u>1:26-cv-02286-MIS-SCY</u> |

## <u>PLAINTIFFS' EMERGENT MOTION FOR PRELIMINARY INJUNCTION</u>

Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs New Mexico Forward Party ("NMFP"), Bob Perls, Michael Vigil, Dennis Dinge, Harry Montoya and Frances Kava (collectively, Plaintiffs) respectfully move for a preliminary injunction in this time-sensitive election law case to enjoin Defendants Maggie Toulouse Oliver, the Secretary of State of New Mexico ("the Secretary"), and Barbara DeLaney, the County Clerk of Luna County, New Mexico (together, "Defendants") from enforcing New Mexico Statutes §§ 1-8-2-B and 1-8-2(E) as applied to Plaintiffs in the 2026 election cycle.

To the best of Plaintiffs' knowledge and belief, pursuant to the Uniformed Overseas Citizens Absentee Voting Act, *see* 52 U.S.C. §§ 20301–20311, Defendants must print New Mexico's general election ballots on or about September 15, 2026. Plaintiffs therefore respectfully request that the Court rule on this Motion, which seeks injunctive relief as necessary to ensure the

placement of Plaintiffs Perls, Vigil and Kava as candidates on New Mexico's November 3, 2026 general election, prior to the date on which Defendants print New Mexico's general election ballots.

Pursuant to Local Civil Rule 7.1(a), Plaintiffs state that they have been unable to make a good-faith request for Defendants' concurrence to the relief requested herein because Defendants have not yet entered an appearance. However, contemporaneous with this filing, Plaintiffs have served it upon Peter Auh, an attorney in Defendant Toulouse-Oliver's office, by email to peter.auh@sos.nm.gov, and upon Charles Kretek, an attorney in Defendant DeLaney's office, by email to charles_kretek@lunacountynm.us.

Dated: July 27, 2026

Respectfully submitted,

/s/Oliver B. Hall
Oliver B. Hall
*Pro hac vice*
D.C. Bar No. 976463
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, DC 20009
(202) 248-9294
oliverhall@competitivedemocracy.org

WESTERN AGRICULTURE, RESOURCE
AND BUSINESS ADVOCATES, LLP

A. Blair Dunn, Esq.
Jared R. Vander Dussen, Esq.
400 Gold Ave SW, Suite 1000
Albuquerque, NM 87102
(505) 750-3060
ABDunn@ABlairDunn-Esq.com
warba.llp.jared@gmail.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| NEW MEXICO FORWARD PARTY, BOB PERLS, MICHAEL VIGIL, DENNIS DINGE, HARRY MONTOYA and FRANCES KAVA, <br><br> Plaintiffs, <br><br> v. <br><br> MAGGIE TOULOUSE OLIVER, in her official capacity as Secretary of State of New Mexico, and BARBARA DELANEY, in her official capacity as County Clerk of Luna County, New Mexico, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  No.: <u>1:26-cv-02286-MIS-SCY</u> |

## <u>PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENT MOTION FOR PRELIMINARY INJUNCTION</u>

Plaintiffs are the New Mexico state affiliate and candidates of the Forward Party, a nascent but growing national political party. Plaintiff NMFP successfully qualified as a minor political party in 2026, but could not place a single nominee for statewide office on the general election ballot due to New Mexico's unnecessary requirement that each nominee submit a separate petition to qualify. No other state imposes such a requirement. Additionally, no other state requires as many signatures for a minor party to qualify its slate of candidates for statewide office as New Mexico, and no other state is even close. Yet New Mexico also strictly—and unnecessarily— limits the period during which a minor party's nominees are permitted to circulate their petitions. Accordingly, Plaintiffs respectfully request injunctive relief from New Mexico's unconstitutional

signature requirements, as necessary to place NMFP's nominees on New Mexico's 2026 general election ballot.

**Introduction and Factual Background**

*1. New Mexico's Unique Statutory Scheme.*

To be recognized as a qualified "minor political party" under New Mexico law, Plaintiff NMFP was required to submit petitions signed by registered voters equal in number to 0.5 percent of the total vote in the preceding election for Governor. *See* New Mexico Statutes § 1-7-2(A).[1] This requirement is not unusual: a majority of states—38—similarly require that new parties submit petitions or some other indication of voter support to become ballot-qualified. Declaration of Richard Winger ("Winger Decl.") ¶ 15. New Mexico's 0.5 percent petition requirement places it squarely within the median of these states. *Id.* ¶ 16. But what makes New Mexico's statutory scheme unusual—unique, in fact—is that a new party that successfully qualifies pursuant to § 1-7-2(A) is not permitted to place its nominees on the general election ballot (except its nominees for President and Vice President). *Id.* ¶ 17. Instead, to qualify for placement on the general election ballot, each nominee (except for President and Vice President) must submit a separate and additional petition. *See* §§ 1-8-1(B); 1-8-2.

The only other state that imposed such a double petition requirement on minor parties is Maryland, but its statutory scheme was struck down more than 20 years ago. *See Maryland Green Party v. Maryland Bd. of Elections*, 832 A.2d 214, 231 (Md. 2003) (holding that Maryland's "two-tiered petitioning requirement for minor parties discriminates against minor political parties in violation of the equal protection component of Article 24 of the Maryland Declaration of Rights."). A major party nominee, the Court reasoned, "does not have to show any personal 'modicum of

---

[1] Hereinafter all statutory citations are to the New Mexico Statutes unless otherwise indicated.

support' to be on the general election ballot; the 'modicum of support' is the prior support of the party itself." *Id*. at 232-33. By contrast, for a minor party nominee, "the requisite 1% showing of support is in addition to the initial showing of support which the minor political party has already demonstrated upon submitting its party-forming petition." *Id*. at 233 (emphasis original). The Court therefore concluded that requiring minor party nominees to submit individual petitions did not further any state interest. *See id*. at 235-36.

NMFP and its supporters now face the same unconstitutional burden that minor parties faced in Maryland before its double petition requirement was struck down. The additional petitioning requirement that New Mexico imposes on NMFP's nominees erects a drastic barrier against its ability to participate in the political process as a qualified minor party, and it is wholly unnecessary to further any state interest. Worse, New Mexico penalizes new parties with relatively few members, like NMFP, by requiring their nominees to submit petitions with twice the number of signatures as nominees of an established minor party that has reached a certain threshold of members. *See* §§ 1-8-2(B)(1), (2).

### 2. *New Mexico's Unnecessary Petition Requirements for Minor Party Nominees.*

Minor parties select their nominees by convention. *See* § 1-8-2(A). But unlike nominees of a major political party, *see infra* at 6, who are placed on the general election ballot automatically once they are selected by primary election, the nominees of a minor party each must submit their own separate petition to qualify for the general election ballot. *See* §§ 1-8-2(B)(1), (2). Under §§ 1-8-2(B)(1) and (2), if a minor party's membership statewide (for candidates for statewide office) or in a district (for candidates for district office) amounts to more than 1 percent of the total vote for Governor in that jurisdiction in the preceding election, then the minor party's nominees must submit petitions signed by voters equal to 1 percent of the total vote for Governor in that

3

jurisdiction in the previous election. *See id*. But if a newly-qualified party like NMFP has not had time to grow its membership to the requisite threshold, then the signature requirement for its nominees is doubled to 2 percent of the total vote for Governor in the jurisdiction in the preceding election. *See id*.; *see also* § 1-8-51 (prescribing the signature requirements for Independent candidates, with which minor party nominees must comply if the minor party's membership does not meet the threshold required by §§ 1-8-2(B)(1) and (2)). This arbitrary and punitive requirement also serves no state interest.

As calculated by the Secretary for purposes of the 2026 general election, 1 percent of the total vote for Governor in the preceding election equals 7,100, and 2 percent equals 14,200. *See* New Mexico Office of the Secretary of State, *2026 Nominating Petition for Minor Parties and Decline to State (Independent) Candidates Calculations ("Petition Calculations")*, at 2, available at https://www.sos.nm.gov/wp-content/uploads/2026/04/2026-Nominating-Petition-Calculations-for-Minor-Parties-and-Independent.pdf (accessed July 23, 2026). In 2026, therefore, if a qualified minor party has more than 7,100 registered members statewide, then its nominees for statewide office must submit petitions containing 7,100 signatures. If a minor party has fewer than 7,100 registered members statewide, however, its nominees for statewide office must submit petitions containing 14,200 signatures. *See* §§ 1-8-2(B)(1), (2). For NMFP, it was a virtual certainty that its nominees would be subject to the higher 2 percent requirement imposed by §§ 1-8-2(B)(1) and (2), because its party petition was due no later than 23 days after New Mexico's June 2, 2026 primary election, *see* § 1-7-4(A); *see also* § 1-8-11 (the primary election is held on the first Tuesday after the first Monday in June), and its nominees' petitions were due the same day—June 25, 2026. *See* §§ 1-8-2(A), (B). Although NMFP submitted its party petition early, on May 8, 2026, Complaint (ECF No. 1) ("Compl.") ¶ 32, and it was certified as a qualified party on May 14, 2026,

Compl. ¶ 35, that still gave NMFP just 41 days to register 7,100 members before its nominees were required to submit their petitions.

Because NMFP did not have 7,100 members by the June 25, 2026 filing deadline, its nominees were subject to the higher 2 percent requirement imposed by §§ 1-8-2(B)(1) and (2). Compl. ¶ 36. NMFP's nominees for statewide office were therefore required to submit petitions meeting the following signature requirements:

| | |
|---|---|
| United States Senate: | 14,200 |
| Governor: | 14,200 |
| Lieutenant Governor: | 14,200 |
| Secretary of State: | 14,200 |
| Attorney General: | 14,200 |
| State Auditor: | 14,200 |
| State Treasurer: | 14,200 |
| Commissioner of Public Lands: | 14,200 |
| Court of Appeals Judge: | 14,200 |

Compl. ¶ 39; *see* § 1-8-2(B)(1). That is a total of 127,800 signatures required just for NMFP to qualify its nominees for statewide offices. Together with the new party petition NMFP itself was required to submit with 3,561 signatures, Compl. ¶ 30, NMFP needed to submit 10 separate petitions with 131,361 total signatures to qualify its slate of nominees for statewide offices. But even if NMFP complied with those requirements, it still would not be permitted to run any nominees for the hundreds more offices for state legislature, judicial office, public education commissioner and county office, each of which requires its own separate and additional petition. *See* Petition Calculations, *supra*, at 2-11.

### 3. *New Mexico's Additional Requirements and Restrictions on Petition Circulation.*

Candidates seeking to run as NMFP's nominees were also required to change their voter registration to NMFP no later than the date on which the party filed its petition pursuant to § 1-7-2(A).  *See* § 1-8-2(E)(1).  That meant the candidates had to change their registration before they knew whether NMFP would be a qualified minor party.  This significantly limited NMFP's ability to recruit candidates, Declaration of Bob Perls ("Perls Decl.") ¶¶ 7-8, and it is yet another statutory requirement that serves no state interest.

Additionally, New Mexico places severe limitations on minor party nominees' right to circulate petitions.  Under New Mexico law, minor party nominees are required to submit petitions "on forms prescribed by law," *see* § 1-8-65(B), but the Secretary is not required to make that form available to them until March of the year in which they seek to qualify for the general election ballot.  *See* § 1-8-65(D).  In 2026, the Secretary did not do so until on or about March 29.  Compl. ¶ 43.  At most, that would have permitted NMFP's nominees to circulate petitions for less than three months.  But NMFP's nominees could not start petitioning until the Secretary certified it as a qualified party on May 14, 2026.  Compl. ¶ 43; Perls Decl. ¶ 5.  As a result, NMFP's nominees had just 41 days to circulate their petitions.

### 4. *Major Party Candidates and Nominees Face No Such Obstacles.*

The nominees of a "major political party"—parties that had a candidate who received votes equal to at least 5 percent of the total votes cast for Governor or President in the preceding election, and whose membership totals at least one-third of one percent of statewide registered voters, *see* § 1-7-7(A)—do not face any of these obstacles.  Major party nominees are selected by primary election.  *See* § 1-8-1(A).  Once they win their party's nomination they are automatically placed

6

on the general election ballot.  Thus, unlike minor party nominees, major party nominees need not make any individual showing of support to qualify for placement on the general election ballot.

Additionally, major party candidates are not even required to petition for placement on the primary election ballot.  Instead, they may be designated for placement on the primary election ballot by vote at the party's convention.  *See* § 1-8-21.1.  Each candidate who receives at least 20 percent of that vote qualifies.  *See id.*

Major party candidates can also qualify for the primary election ballot by submitting petitions, *see* §§ 1-8-21(A), (B), but their signature requirements are significantly lower than those that apply to minor party nominees seeking access to the general election ballot.  Major party candidates must obtain signatures from party members equal to 3 percent of the total vote in the party's preceding primary election for Governor.  *See* § 1-8-33(C).  That requirement, as calculated by the Secretary for candidates for statewide office, translated to 2,505 signatures for Democrats and 2,351 signatures for Republicans.  Compl. ¶ 44.  Major party candidates are also permitted to circulate petitions for nearly twice as long minor party nominees.  The petition form that major party candidates circulate must be made available in October of the year before their primary election, *see* § 1-8-30(D), and the petitions must be filed on the second Tuesday of March in the year of the primary election.  *See* § 1-8-26(B).  For the 2026 election cycle, the Secretary posted the petitions on or about October 1, 2025.  Compl. ¶ 45.  That gave major party candidates approximately 5-1/2 months to circulate their petitions for placement on the primary ballot. Compl. ¶ 45.

### 5.  *Plaintiffs' Efforts to Qualify for New Mexico's 2026 General Election Ballot.*

Five NMFP nominees were selected at the party's convention and attempted to qualify for New Mexico's 2026 general election ballot—Plaintiffs Perls, Vigil, Dinge, Montoya and Kava.

Due to the obstacles these nominees faced—the excessive signature requirements and short time for meeting them—Plaintiffs planned to focus their ballot access efforts on leveraging New Mexico's online petitioning platform, which allows voters to sign petitions online. *See* New Mexico Secretary of State, *Sign A Petition*, available at https://www.electronicpetitions.elections.sos.nm.gov/ (accessed July 23, 2026). Their strategy was to execute a field operation and digital outreach campaign that would drive their supporters to sign NMFP candidates' petitions online, while also circulating petitions in person. Collectively, Plaintiffs spent nearly $63,000 on these efforts. Compl. ¶ 47; Perls Decl. ¶ 14. The majority of those funds—more than $44,500—was dedicated to Plaintiffs' digital outreach campaign, Compl. ¶ 47; Perls Decl. ¶ 14, which generated nearly 1.166 million text messages sent to more than 500,000 registered voters. Compl. ¶ 54. More than 56,000 of these voters attempted to access the NMFP candidates' petitions online, but the platform ultimately yielded fewer than 2,700 signatures in total. Compl. ¶ 54. The reason: the Secretary deactivated the online petitioning platform for almost the entirety of the NMFP candidates' petitioning period. Perls Decl. ¶ 15. And when it was finally activated, the platform erroneously blocked many voters from using it to sign petitions. Perls Decl. ¶ 16.

Ultimately, NMFP was able to qualify only two of its nominees for the general election ballot: Plaintiff Dinge, who is running for Public Education Commission and was required to submit 1,014 signatures, and Plaintiff Montoya, who is running for Santa Fe County Magistrate Judge and was required to submit 928 signatures. Compl. ¶¶ 50-51; Declaration of Dennis C. Dinge ("Dinge Decl.") ¶¶ 6, 12; Declaration of Harry Montoya ("Montoya Decl.") ¶¶ 5, 8. Plaintiffs Perls and Vigil, NMFP's nominees for statewide offices, exceeded the signature requirements applicable to major party candidates, but did not meet the requirements imposed by

§ 1-8-2(B)(1).  Compl. ¶¶ 44, 48-49; Perls Decl. ¶ 17; Declaration of Michael J. Vigil ("Vigil Decl.") ¶ 12.  Plaintiff Kava, NMFP's nominee for Luna County Magistrate Judge, exceeded the 79-signature requirement to qualify for her office, but Defendant DeLaney determined that she did not qualify because she had not registered with FNMP on the date the party became qualified as required by § 1-8-2(E)(1).  Compl. ¶ 52; Declaration of Frances Kava ("Kava Decl.") ¶¶ 6, 8, 9.  That was also true of Montoya, but he was placed on the general election ballot anyway, Compl. ¶ 53, demonstrating the needlessness of the requirement.  Montoya Decl. ¶ 8.

## ARGUMENT

A party seeking a preliminary injunction must demonstrate: (1) that the movant "is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest." *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016) (citation and internal brackets omitted).  Plaintiffs satisfy each element here.

### I. Plaintiffs Are Substantially Likely to Succeed on the Merits.

#### A. New Mexico's Statutory Scheme Cannot Withstand Constitutional Scrutiny Under the *Anderson/Burdick* Framework.

Defendants' enforcement of §§ 1-7-2(A), 1-8-2(B), 1-8-2(E) and 1-8-65(A), (B) and (D) in the 2026 election cycle cannot withstand scrutiny under the Supreme Court's *Anderson/Burdick* framework.  *Anderson/Burdick* requires courts to weigh "the character and magnitude of the asserted injury" to Plaintiffs' First and Fourteenth Amendment rights against "the precise interests put forward by the State as justifications . . . ." *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).  The severity of the burden dictates the appropriate level of scrutiny.  *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992).  Where, as here, the evidence establishes a severe burden, "strict scrutiny

9

applies," *Fish v. Schwab*, 957 F.3d 1105, 1125 (10th Cir. 2020) (citation omitted), and Defendants must show that the challenged provisions are "narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 434 (citation and quotation marks omitted). Defendants cannot do so because the evidence demonstrates §§ 1-7-2(A), 1-8-2(B), 1-8-2(E) and 1-8-65(A), (B) and (D) are unconstitutional under well-settled Supreme Court precedent.

1.  Defendants' Enforcement of §§ 1-7-2(A), 1-8-2(B), 1-8-2(E) and 1-8-65(A), (B) and (D) Severely Burdens Plaintiffs' First and Fourteenth Amendment Rights.

The Supreme Court has never established a "litmus test for measuring the severity of a burden that a state law imposes," *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008), but it has recognized several indicia or standards that are sufficient to demonstrate a "severe" burden. One relevant comparison is whether a state's requirements are more restrictive than those of other states. *See Williams v. Rhodes*, 393 U.S. 23, 47 & n.10 (1968) (Harlan, J., concurring). By that metric, New Mexico's signature requirements are undoubtedly severe.

The 10 petitions containing 131,361 signatures that New Mexico requires of a minor party to place its nominees for statewide office on the general election ballot is, by far, greater than the requirement imposed by any other state. Winger Decl. ¶ 21. The next closest state is Texas, which in 2026 imposed a requirement of 81,030 signatures. Winger Decl. ¶ 21; *see* TEX. ELEC. CODE § 181.005(a) (minor parties qualify to place nominees on general election ballot by submitting petition with signatures equal in number to 1 percent of total vote for Governor in preceding election). Thus, while Texas's population of approximately 31.7 million dwarfs that of New Mexico's population of approximately 2.1 million, *see* Stats America, *Population Estimate for 2025*, available at https://www.statsamerica.org/sip/rank_list.aspx?rank_label=pop1 (accessed July 25, 2026) (citing U.S. Census Bureau data), New Mexico's signature requirement is more than 38 percent greater than Texas's. By contrast, in New Mexico's neighboring state of Colorado

(population 6 million, *see id.*), a single petition with 10,000 signatures qualifies a minor party to place its nominees for all offices on the general election ballot.  Winger Decl. ¶ 19.  And in Utah (population 3.5 million, *see* Stats America, *supra*), a single petition with 2,000 signatures is sufficient.  Winger Decl. ¶ 18.  Courts frequently rely on such comparisons to support the finding that a state's ballot access requirements are severely burdensome.  *See*, *e.g.*, *Lee v. Keith*, 463 F.3d 763, 766, 768-69 (7th Cir. 2006) (finding Illinois' signature requirement severely burdensome in part because it was higher than any other state's); *Graveline v. Benson*, 992 F.3d 524, 540 (6th Cir. 2021) (finding Michigan's signature requirement severely burdensome in part because it was higher than all but five other states').

The heavy burden imposed by New Mexico's excessive signature requirements is exacerbated by the severe restrictions New Mexico places on minor party nominees' petition circulation.  New Mexico requires such nominees to use an official form produced by the Secretary, but that form is not made available to the nominees until March of the year in which they seek to qualify.  *See* §§ 1-8-65(A), (B), (D).  Yet the nominees must file the petitions by the 23rd day after the primary election—here, June 25, 2026.  *See* § 1-8-2(B).  And if the minor party is newly qualifying, like NMFP, then its nominees cannot start petitioning until the date on which the Secretary certifies the party as qualified.  For NMFP, that date was May 14, 2026, which gave its nominees just 41 days to circulate petitions.  Compl. ¶¶ 35, 41; Perls Decl. ¶ 5.

State ballot access requirements are also severely burdensome if they "operate to freeze the political status quo."  *Jenness v. Fortson*, 403 U.S. 431, 438 (1971).  Relatedly, the Supreme Court has recognized that "past experience" can guide the analysis: a statutory scheme is severely burdensome if minor party and independent candidates "only rarely … succeed in getting on the ballot," whereas the reverse is true if they "have qualified with some regularity."  *Storer v. Brown*,

11

415 U.S. 724, 742 (1974).  Applying these standards, lower courts routinely strike down ballot access schemes when evidence shows candidates historically fail to qualify.  *See*, *e.g.*, *Graveline*, 992 F.3d at 539 (finding statutory scheme severely burdensome where no candidate had complied in more than 30 years); *Lee*, 463 F.3d at 769 (finding statutory scheme severely burdensome where no candidate had complied in 25 years); *Green Party of Ga. v. Kemp*, 171 F. Supp. 3d 1340 (N.D. Ga. 2016) (finding statutory scheme severely burdensome where no candidate had complied in more than 15 years), *aff'd*, 674 F. App'x 974 (11th Cir. 2017); *Nader v. Brewer*, 531 F.3d 1028, 1038 (9th Cir. 2008) (finding statutory scheme severely burdensome where no candidate had complied in 15 years); *Delaney v. Bartlett*, 370 F. Supp. 2d 373, 378 (M.D.N.C. 2004) (finding statutory scheme severely burdensome where only one candidate had complied in 20 years).

Here, evidence in the public record—*i.e.*, New Mexico's official elections results—confirms that the challenged provisions operate to freeze the political status quo.  Although minor parties may become "qualified" pursuant to § 1-7-2(A), they rarely place their nominees on New Mexico's general election ballot.  Independent candidates also rarely qualify.  In almost every race for U.S. House and U.S. Senate from 2002 – 2024, just two candidates qualified for the ballot.  Winger Decl. ¶ 23.  That is also true of New Mexico's elections for statewide state offices in the same period—just two candidates qualified for the ballot.  Winger Decl. ¶ 24.  Indeed, in every election for state and federal office (except President)[2] since 2000, New Mexico has never had more than three candidates on the ballot.  Compl. ¶ 55 (citing official election results); Winger Decl. ¶ 23.  Even fewer candidates appear on the ballot for state legislature.  In a *majority* of state legislative races in almost every election cycle for the last two decades, a single candidate appeared

---

[2] Presidential elections are an exception because New Mexico imposes no petition requirement on minor party nominees for President and Vice President.  *See* § 1-15-3.  Even so, New Mexico has never had an overcrowded ballot in presidential elections for the last 24 years.  Compl. ¶¶ 56-57.

on the ballot running unopposed, Compl. ¶¶ 58-72, and not one of those races had more than three candidates on the ballot.  Compl. ¶ 73; *see generally* New Mexico Secretary of State, *Election Results*, available at https://www.sos.nm.gov/voting-and-elections/election-results/ (accessed July 26, 2026).

Finally, courts have recognized that the cost of complying with ballot access requirements "inherently burdens [the] electioneering activity" of the candidates and parties subject to them. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 364-65 (3d Cir. 2014) (citations omitted).  As the Seventh Circuit observed in holding an Illinois statute unconstitutional, "[t]he uncontested record indicates that [the plaintiffs'] ballot access took a lot of time, money and people, which cannot be characterized as minimally burdensome." *Krislov v. Rednour*, 226 F.3d 851, 860 (7th Cir. 2000).  Courts thus frequently rely on the cost of complying with ballot access requirements to support a finding of a severe burden.  *See Graveline v. Benson*, 430 F. Supp. 3d 297, 309, 311 (E.D. Mich. 2019) (relying on cost of complying with signature requirement to support finding of severe burden), *aff'd*, 992 F.3d 524, 540 (6th Cir. 2021); *Green Party of Ga.*, 171 F. Supp. 3d at 1350-51, 1363 (same), *aff'd*, 674 F. App'x 974 (11th Cir. 2017) (unpublished); *Constitution Party of Pa. v. Cortes*, 116 F. Supp. 3d 486, 502-06 (E.D. Pa. 2015) (same), *aff'd*, 824 F.3d 386 (3d Cir. 2016). In *Graveline*, the candidate spent $38,000 on his petition drive, and the Court found that figure sufficient to support a finding of a severe burden. *See Graveline*, 430 F. Supp. 3d at 309, 311. In *Green Party of Ga.*, the Court found evidence showing a petition drive costing anywhere from $70,000 to $350,000 sufficient to support a finding of a severe burden. *See Green Party of Ga.*, 171 F. Supp. 3d at 1350-51.  Here too, Plaintiffs spent $63,000 on their ballot access efforts—more than the candidate in *Graveline*—and were not able to qualify a single candidate for statewide office.  That further supports a finding that the challenged provisions are severely burdensome.

13

In sum, whether measured in comparison to other states, by the stifling impact they have had on minor party candidacies, or the cost of complying with them, the burdens imposed by New Mexico's ballot access requirements fall on the "severe" end of the scale.

2. Enforcement of §§ 1-7-2(A), 1-8-2(B), 1-8-2(E) and 1-8-65(A), (B) and (D) Against Plaintiffs Is Not Reasonably Tailored to Further Any State Interest.

The severe burdens New Mexico's statutory scheme imposes here cannot be justified by "generalized and hypothetical interests identified in other cases." *See Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 593 (6th Cir. 2006); *see also Anderson*, 460 U.S. at 793; *Libertarian Party of Ark. v. Thurston*, 962 F.3d 390, 403 (8th Cir. 2020); *Reform Party of Allegheny Cty. v. Allegheny Cty. Dep't of Elections*, 174 F.3d 305, 315 (3d Cir. 1999). Further, while states have legitimate interests in preventing voter confusion and limiting ballot access to candidates with demonstrated support, a ballot access regulation is not narrowly tailored when a state could serve the same interest through less restrictive means. *See Norman v. Reed*, 502 U.S. 279, 289 (1992); *Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 204 (1999). New Mexico's statutory scheme fails this test.

"[T]he presence of eight candidacies cannot be said, in light of experience, to carry a significant danger of voter confusion." *Williams*, 393 U.S. at 47 (Harlan, J., concurring). New Mexico has never exceeded this benchmark, or even approached it, in any election for the last 20 years. *See supra* Part I.A.1. Further, New Mexico never has an overcrowded ballot in presidential elections, despite imposing no petition requirement whatsoever on candidates of qualified parties. Compl. ¶ 57 (citing official elections results). Empirical evidence also shows that, with two exceptions, no state with a signature requirement greater than 5,000 has ever had more than eight candidates on the ballot for statewide office. Winger Decl. ¶; 9. The 10 petitions and 131,361 signatures New Mexico requires of a minor party and its statewide nominees is more restrictive,

14

by several orders of magnitude, than necessary to prevent ballot overcrowding.

Additionally, several of the challenged provisions serve no state interest at all. That is true of the petition requirement that New Mexico imposes on minor party nominees pursuant to § 1-8-2(B)(1) and (2). *See Green Party*, 832 A.2d at 235-36. The nominees of a qualified minor party like NMFP have demonstrated support by winning the nomination of a qualified party no less than the nominees who win a major party's nomination in a primary election. *See id.* at 232-33. Indeed, in New Mexico's 2026 primary elections, a single candidate ran unopposed in 125 out of 142 races for State House, as did the candidates in both major party primary elections for Attorney General, Auditor, Treasurer, and State Court of Appeals (except that no Republican ran for State Court of Appeals). Winger Decl. ¶ 22. "[A]n unopposed Democratic or Republican primary nominee may not necessarily have the support of a significant number of … voters merely because his or her party has chosen that particular candidate to run in his or her party's primary." *Green Party*, 832 A.2d at 233. Yet New Mexico automatically places such candidates on the general election ballot.

New Mexico also has no legitimate interest in *doubling* the signature requirement imposed on a minor party's nominees if the minor party's membership totals less than 1 percent of the total vote for Governor in the preceding election. *See* §§ 1-8-2(B)(1), (2). This punitive and arbitrary requirement is especially pernicious as applied to a newly qualified minor party like NMFP, because it almost certainly will not have time to grow its membership to the requisite threshold before its nominees must submit their petitions pursuant to § 1-8-2(B).

Finally, New Mexico has no legitimate interest in requiring candidates to change their registration to a newly qualifying party no later than the date on which the party filed its petition pursuant to § 1-7-2(A). *See* § 1-8-2(E)(1). This requirement forces such candidates to change their registration before they know if the minor party will actually qualify. It is also clearly

15

unconstitutional.  *See Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 215 (1986) ("Were the State … to provide that only Party members might be selected as the Party's chosen nominees for public office, such a prohibition of potential association with nonmembers would clearly infringe upon the rights of the Party's members under the First Amendment to organize with like-minded citizens in support of common political goals.").

### B. New Mexico's Ban on Petitioning By Minor Party Nominees Until March of the Year in Which They Seek to Qualify Violates the First Amendment.

New Mexico's prohibition against minor party nominees petitioning until March of the year in which they seek to qualify for the ballot violates the First Amendment.  *See* §§ 1-8-65(A), (B), (D).  The circulation of a petition "involves both the expression of a desire for political change and a discussion of the merits of the proposed change." *Meyer v. Grant*, 486 U.S. 414, 421 (1988). That is no less true here than in *Grant*.  Like the petition circulators in *Grant*, NMFP and its supporters must engage with voters and convince them to support Plaintiffs' effort to qualify for the ballot. *See id*. at 421 and n.4.  "Thus, the circulation of a petition involves the type of interactive communication concerning political change that is appropriately described as 'core political speech.'"  *Id.* at 421-22 (footnote omitted).

In *Grant*, the Court struck down a Colorado law that prohibited the payment of petition circulators who sought to qualify an initiative for the ballot.  *See id.* at 422-23.  The Court found the prohibition restricts political expression in two ways: first, it limits the number of speakers in support of a petition and the hours they can speak, thus limiting the size of the audience they can reach; and second, it makes it less likely the petitioners will succeed in qualifying for the ballot, thus limiting their ability to make the initiative a focus of statewide discussion.  *See id.* at 422-23. The Court therefore concluded that Colorado's prohibition "trenches upon an area in which the importance of First Amendment protections is 'at its zenith,'" and that Colorado's burden to justify

16

its law was "well-nigh insurmountable." *Id.* at 425.

Applying strict scrutiny, the Court disposed of Colorado's asserted justifications for its law, rejecting the assertion that the prohibition on paying petition circulators was necessary to ensure the initiative had sufficient support to justify placing it on the ballot and to protect the integrity of the initiative process. *See id.* at 425-28. In so doing, the Court observed that "legislative restrictions on advocacy of the election or defeat of political candidates are wholly at odds with the guarantees of the First Amendment." *Id.* at 428 (quoting *Buckley v. Valeo*, 424 U.S. 1, 50 (1976)). The Court found that principle equally applicable to "the discussion of political policy generally or advocacy of the passage or defeat of legislation" involved in the circulation of initiative petitions. *Id.* (quoting *Buckley*, 424 U.S. at 48).

New Mexico's ban on petitioning by minor party nominees until March of the election year in which they seek to qualify is more restrictive than Colorado's ban on paying petition circulators. Sections 1-8-65(A), (B) and (D) impose an absolute prohibition on petition circulation outside a narrow statutory window—not merely a restriction on paying circulators. The provisions thus restrict the "advocacy of the election or defeat of political candidates" and consequently are "wholly at odds with the guarantees of the First Amendment." *Id.* (quoting *Buckley*, 424 U.S. at 50). They also restrict core political speech in the same ways Colorado's law did: they limit the time circulators have to petition and the audience they can reach, and make it less likely minor party nominees will qualify for the ballot, limiting their ability to make their candidacies the focus of statewide discussion. *See Grant*, 486 U.S. at 422-23.

Because §§ 1-8-65(A), (B) and (D) directly restrict core political speech just as the Colorado law did, they are subject to the same "exacting scrutiny" the Court applied in *Grant*. *See Grant*, 486 U.S. at 420 (citing *Buckley*, 424 U.S. at 45). Sections 1-8-65(A), (B) and (D) must be

17

"closely scrutinized and narrowly construed," *id.* at 423 (citation omitted), and New Mexico must "demonstrate that it is necessary to burden [Plaintiffs'] ability to communicate their message in order to meet its concerns." *Id.* at 426. Here, as in *Grant*, the burden New Mexico must overcome "is well-nigh insurmountable." *Id.* at 425.

New Mexico cannot carry that burden. As a preliminary matter, New Mexico permits major party candidates to start petitioning for access to the primary election ballot in October of the year before that election. *See* § 1-8-30(D). No state interest justifies New Mexico in prohibiting minor party nominees from engaging in the same First Amendment protected conduct at the same time. Although major party candidates' petitions are due in March, *see* § 1-8-26(B), whereas minor party nominees' petitions are due in June, *see* §§ 1-8-2(A), (B), the major party candidates' earlier filing deadline does not justify any restriction on minor party nominees' petitioning before March. Furthermore, as applied here, New Mexico's statutory petitioning period for major party candidates lasted approximately 5-1/2 months—nearly twice the duration of minor party nominees' petitioning period—even though major party candidates need only a fraction of the signatures required of minor party nominees. Compl. ¶ 45. The Supreme Court has squarely held that such disparate treatment exceeds states' power to regulate the time, place and manner of holding elections as applied to federal candidates like Plaintiff Perls. *See Cook v. Graelike*, 531 U.S. 510, 524 (2001). "[T]he Framers understood the Elections Clause as a grant of authority to issue procedural regulations, and not as a source of power to dictate electoral outcomes, to favor or disfavor a class of candidates, or to evade important constitutional restraints." *Id.* (quoting *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 833-34 (1995).

New Mexico's restriction on minor party nominees' petitioning also is not narrowly tailored: §§ 1-8-65(A), (B) and (D) prohibit Plaintiffs from engaging in core political speech except

18

within a small window from March until June, while major party candidates are afforded nearly twice that time—161 days in this election cycle. Compl. ¶ 45. If New Mexico can accommodate petitioning by major party candidates for nearly six months, it can accommodate petitioning by minor party candidates for at least the same length of time. There is no legitimate justification for New Mexico to provide major party candidates such preferential treatment.

Sections 1-8-65(A), (B) and (D) are also constitutionally infirm because they are viewpoint discriminatory. The Supreme Court has long recognized that "the First Amendment's hostility to content-based regulation extends not only to a restriction on a particular viewpoint, but also to a prohibition of public discussion of an entire topic." *Burson v. Freeman*, 504 U.S. 191, 197 (1992) (citations omitted). Sections 1-8-65(A), (B) and (D) run afoul of this precedent. They impose an outright prohibition on minor party candidates' core political speech of circulating nomination petitions outside the statutorily prescribed window, *see Grant*, 486 U.S. at 421-22, even though New Mexico allows major party candidates to engage in such speech for nearly twice as long. "As a facially content-based restriction on political speech in a public forum," Sections 1-8-65(A), (B) and (D) therefore "must be subjected to exacting scrutiny: The State must show that the regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Burson*, 504 U.S. at 198 (citations and quotation marks omitted). New Mexico cannot do so here.

In sum, Sections 1-8-65(A), (B) and (D) do not further any legitimate regulatory interests New Mexico may have, such as protecting the right to vote or ensuring the integrity of elections. Instead, they impose an outright ban on the core political speech of identifiable groups—and only those groups—without serving any compelling state interest. The ban applies year-round except for the narrow petitioning period prescribed by statute, and it is not narrowly tailored. Because Sections 1-8-65(A), (B) and (D) cannot survive the strict scrutiny applicable under both *Grant* and

19

*Burson*, there is a substantial likelihood Plaintiffs will prevail on their challenge to those provisions.

## II. The Remaining Preliminary Injunction Factors Weigh Heavily in Plaintiffs' Favor.

### A. Plaintiffs Will Suffer Irreparable Harm Absent the Requested Relief.

It is well settled that "[t]he loss of First Amendment freedoms, for even minimal periods of time, constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Further, "[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Fish*, 840 F.3d at 752 (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (2d ed. 1995)). Here, Plaintiffs' irreparable harm is severe and imminent. Absent relief, Plaintiffs Perl, Vigil and Kava will be excluded from New Mexico's 2026 general election ballot, which will cause irreparable harm to Plaintiffs' voting, speech, and associational rights. *See Williams*, 393 U.S. at 31. Accordingly, while the Court must engage in the "traditional equitable inquiry as to the presence of irreparable harm … the violation of a constitutional right must weigh heavily in that analysis." *Fish*, 840 F.3d at 752 (citation omitted).

### B. The Equities Favor Plaintiffs.

Defendants cannot credibly articulate any harm if they are enjoined from enforcing the challenged provisions against Plaintiffs. New Mexico's interest in limiting ballot access to candidates with demonstrated support is not served by excluding candidates who have in fact demonstrated support by winning the nomination of a qualified political party. *See Green Party*, 832 A.2d at 232-33. Nor is New Mexico's interest served by unconstitutionally excluding Plaintiff Kava from the ballot simply because she was not a registered member of NMFP when the party submitted its petitions to become qualified. *See Tashjian*, 479 U.S. at 215. By contrast, Plaintiffs

20

will be deprived of their "most precious [First Amendment] freedoms." *Williams*, 393 U.S. at 30. The balance of equities tips decisively in Plaintiffs' favor. *See Fish*, 840 F.3d at 754-55.

### C. Plaintiffs' Requested Relief Is in the Public Interest.

The requested injunction will serve the public interest by protecting the right of all New Mexicans to cast their votes effectively. *See id.* at 756 (recognizing that Congress has determined "the public interest in the widespread exercise of the franchise…"). If Plaintiff Perls is not on the ballot for United States Senate, that race will feature a Democratic candidate running unopposed (with a Republican candidate running as a write-in). *See* New Mexico Secretary of State, *Official Results, June 2, 2026 Primary*, available at https://electionresults.sos.nm.gov/resultsSW.aspx?type=FED&map=CTY (accessed July 27, 2026). Similarly, if Plaintiff Vigil is not on the ballot for State Auditor, that race will feature a Democratic candidate running unopposed (with a Republican candidate running as a write-in). *See* New Mexico Secretary of State, *Official Results, June 2, 2026 Primary*, available at https://electionresults.sos.nm.gov/resultsSW.aspx?type=SW&map=CTY (accessed July 27, 2026). And if Plaintiff Kava is not on the ballot for Luna County Magistrate Judge, that race too will feature a single candidate—the Republican—running unopposed without even a write-in candidate to challenge him. New Mexico Secretary of State, *Official Results, June 2, 2026 Primary*, available at https://electionresults.sos.nm.gov/resultsSW.aspx?type=MGX&map=CTY (accessed July 27, 2026). The requested relief will therefore not only vindicate Plaintiffs' rights, but the voting rights of all New Mexicans.

"[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Awad v. Ziriax*, 670 F.3d 1111 (10th Cir. 2012); *see also id.* (noting "[t]he strong public interest in protecting First Amendment values") (citation omitted). By contrast, because New

21

Mexico "does not have an interest in enforcing a law that is likely constitutionally infirm … the public interest will perforce be served by enjoining the enforcement of the invalid provisions of state law." *Chamber of Commerce of US v. Edmondson*, 594 F.3d 742, 771 (10th Cir. 2010).  The public interest is further served because the relief sought imposes no meaningful burden on the administration of New Mexico's elections.  Enjoining the challenged provisions will not alter voting procedures or disrupt important election deadlines.

**CONCLUSION**

New Mexico's Election Code provisions discussed herein violate Plaintiffs' rights under the First and Fourteenth Amendments.  Without intervention from this Court, Plaintiffs will suffer irreparable harm and NMFP's duly chosen nominees will be kept off the ballot.  That would be a manifest injustice and cannot stand.  For the foregoing reasons, Plaintiffs respectfully request that this Court enter a preliminary injunction enjoining Defendants from enforcing New Mexico Statutes §§ 1-8-2-B and 1-8-2(E) as applied to Plaintiffs in the 2026 election cycle.

Dated: July 27, 2026

Respectfully submitted,

/s/Oliver B. Hall
Oliver B. Hall
*Pro hac vice*
D.C. Bar No. 976463
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, DC 20009
(202) 248-9294
oliverhall@competitivedemocracy.org


WESTERN AGRICULTURE, RESOURCE
AND BUSINESS ADVOCATES, LLP

A. Blair Dunn, Esq.
Jared R. Vander Dussen, Esq.

22

400 Gold Ave SW, Suite 1000
Albuquerque, NM 87102
(505) 750-3060
ABDunn@ABlairDunn-Esq.com
warba.llp.jared@gmail.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 27, 2026, I caused the foregoing document to be filed using the Court's CM/ECF system, which effect service upon all counsel of record.  I further certify that on July 27, 2026, the foregoing document and its attachments were served upon Peter Auh, an attorney in Defendant Toulouse-Oliver's office, by email to peter.auh@sos.nm.gov, and upon Charles Kretek, an attorney in Defendant DeLaney's office, by email to charles_kretek@lunacountynm.us.


/s/Oliver B. Hall
Oliver B. Hall

*Attorney for Plaintiffs*