**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

NEW MEXICO FORWARD PARTY; BOB PERLS; MICHAEL VIGIL; DENNIS DINGE; HARRY MONTOYA; AND FRANCES KAVA,

Plaintiffs,

v. Civ. No. 1:26-cv-02286-MIS-KK

MAGGIE TOULOUSE OLIVER, in her official Capacity as Secretary of State of New Mexico; and BARBARA DELANEY, in her official capacity as County Clerk of Luna County, New Mexico,

Defendants.

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

THIS MATTER is before the Court on Plaintiffs New Mexico Forward Party, Bob Perls, Michael Vigil, Dennis Dinge, Harry Montoya and Frances Kava's ("Plaintiffs") Emergency Motion for Preliminary Injunction ("Motion"), ECF No. 8, filed July 27, 2026. On August 14, 2026, Defendant Maggie Toulouse Oliver, as Secretary of State of New Mexico ("Defendant"), filed a Response. ECF No. 13. On August 15, 2026, Plaintiffs filed a Reply. ECF No. 14. On August 28, 2026, the Court held a hearing on the Motion. Clerk's Min. of Hr'g of Aug. 28, 2026, ECF No. 21. The Motion is ripe for consideration. Upon review of the Parties' submissions, the record, and the relevant law, the Court will deny Plaintiffs' Motion.

## I. Background

Plaintiffs seek a preliminary injunction on constitutional grounds to enjoin the Secretary of State of New Mexico and the County Clerk of Luna County "from enforcing New Mexico Statutes

§§ 1-8-2(B) and 1-8-2(E) as applied to Plaintiffs in the 2026 election cycle." *See* Mot. at 1, 3-4, ECF No. 8. The former statute section delineates how many signatures are required to be submitted via petition by minor party candidates for statewide and local office and when they must be submitted. *See* N.M. Stat. Ann. § 1-8-2(B). The latter statute section requires candidates to be a member of that party "not later than the date the political party filed its rules and qualifying petitions" and a resident in the district of the office for which the candidate is running. § 1-8-2(E).

Plaintiffs also challenge New Mexico Statutes §§ 1-7-2(A), 1-8-65(A), 1-8-65(B), and 1-8-65(D). Mot. at 11, ECF No. 8; *see also* Compl. ¶¶ 78-88, ECF No. 1. The first requires political parties to (1) adopt and file rules with the secretary of state and (2) submit petitions with a number of signatures of registered New Mexico voters equaling at least one half percent of the number of total voters for governor in the previous election to qualify as a political party. § 1-7-2(A). The second two statute sections require minor party candidates to use state-authorized petitions to obtain signatures, § 1-8-65(A), and file a nominating petition at the same time as a declaration of candidacy, both on authorized forms, § 1-8-65(B). The final statute section requires the secretary of state to make such forms available in March of even-numbered years, i.e., election years. § 1-8-65(D).

Plaintiff New Mexico Forward Party (NMFP) qualified as a "minor political party" under New Mexico law on May 14, 2026, Mot. at 6, ECF No. 8, having obtained a number of petitions signed by registered voters equal or greater in number to one half percent of the total vote for governor in the preceding election, *id.* at 6-7; § 1-7-2(A). In 2026, that number was 3,561. Mot. at 7, ECF No. 8.

The four remaining Plaintiffs attempted to run in the 2026 New Mexico general election as state and national NMFP candidates for office. *Id.* at 3. Those candidates were required by New

Mexico state law to change their voter registration to NMFP no later than the date on which the party filed its petition. *Id.* at 8. The candidates were also required to obtain and submit signature petitions to qualify for the general election ballot. *Id.* at 5-6, 9-11. This requirement changes depending on the office, § 1-8-2(B), but all petitions this year were due on June 25, 2026, Mot. at 13, ECF No. 8.

Statewide candidates of minor parties whose registered membership is less than one percent of the total number of voters for governor in the previous election must submit petitions containing a number of signatures equal to two percent of the total number of voters for governor in the previous election to qualify for the ballot. *Id.* at 6. The NMFP has 227 registered members, Resp. at 14, ECF No. 13, meaning its candidates for statewide office had to submit petitions containing 14,200 signatures to qualify in 2026, Mot. at 6, ECF No. 8. Minor party candidate signatures may come from any registered voter, Resp. at 2, ECF No. 13, provided the voter resides in the area to be represented by the office, § 1-8-2(B).

Petition forms are supplied by the New Mexico Secretary of State. § 1-8-65. In 2026 the Secretary of State made the forms available on March 2, 2026. Decl. of Ma. Vigil ¶ 16, ECF No. 13-1.[1] Candidates may also use an online platform to gather signatures. Mot. at 10, ECF No. 8.

Plaintiffs Perls and Vigil, running for statewide office, failed to gather the required number of signatures and were not placed on ballots. *Id.* at 10-11. Plaintiffs claim "the Secretary

---

[1] Plaintiffs claim, without citation, that "the Secretary did not [make petitions available] until on or about March 29, 2026." Compl. ¶ 43, ECF No. 1. Plaintiffs provided no support for their claim at the preliminary injunction hearing, but Defendant established through witness testimony that the forms were available on March 2, 2026. Tr. of Hr'g of Aug. 28, 2026, 38:1 – 39:24 ("When was the paper petition form made available for minor party candidates for the general election? A. March 2nd. Q. And how do you know it was March 2nd? A. I have seen a ticket . . . and our webmaster confirmed and closed out the ticket that it was posted on that date. Q. Okay. Are you aware that the plaintiffs claim that the petition form was not available until March 29th? A. Yes, I am aware. Q. Are you aware of any fact that supports that claim? A. No."). Neither party ordered the hearing transcript. The Court cites to the Court reporter's original rough draft of the hearing transcript. Any final transcript may contain slightly different page and/or line numbers.

deactivated the online petitioning platform for almost the entirety of the NMFP candidates' petitioning period." *Id.* at 10. Defendant claims the platform was functional but Plaintiffs were unable to use the platform because "they were not yet registered with NMFP," having tried to change their registration "during a statutory pause in registration processing between May 5 and June 8[, 2026]." Resp. at 10 n.3, ECF No. 13. An email exchange between Plaintiff Perls and state employees shows that Plaintiff Perls was informed on May 27, 2026, that the system would not be available until June 8, 2026. ECF No. 13-1 at 10-11.

Plaintiff Dinge, running for Public Education Commission, and Plaintiff Montoya, running for Santa Fe County Magistrate Judge, gathered more than the required number of signatures. Mot. at 10, ECF No. 8. Both were placed on the ballot even though Plaintiff Montoya was not a member of the NMFP before "the party became qualified." *Id.* at 10-11.

Plaintiff Kava, running for Luna County Magistrate Judge, gathered more than the required number of signatures but was initially left off the ballot because she failed to register with the NMFP by the time "the party became qualified." *Id.* at 9; § 1-8-2(E). Plaintiff Kava was later placed on the ballot, "consistent with the Secretary's decision to qualify [Plaintiff] Montoya." Resp. at 2 n.1, ECF No. 13.

Plaintiffs argue that they are entitled to a preliminary injunction because they are substantially likely to succeed on the merits, Mot. at 11-22, ECF No. 8, they will suffer irreparable injury if the injunction is denied, *id.* at 22, the threatened injury outweighs the injury New Mexico will suffer under the injunction, *id.* at 22-23, and the injunction will not be adverse to the public interest, *id.* at 23-24.

Defendant argues Plaintiffs should have a heightened burden because Plaintiffs seek a disfavored injunction, Resp. 4-5, ECF No. 13, Plaintiff NMFP, Plaintiff Kava, Plaintiff Montoya,

and Plaintiff Dinge lack standing, *id.* at 2 n.1, and Plaintiffs are bringing a facial challenge, *id.* at 6-7. Defendant further argues that Plaintiffs are unlikely to succeed on the merits, *id.* at 5-21, Plaintiffs face no irreparable harm without a finding of deprivation of constitutional rights, *id.* at 21, and an injunction is contrary to public interest, *id.* at 21-23.

Plaintiffs reply that Defendant's standing challenge is without merit, Reply at 1-2, ECF No. 14, Plaintiffs are bringing an as-applied challenge, *id.* at 2-3, Plaintiffs' claim will survive any standard of scrutiny, *id.* at 3, Plaintiffs are indeed likely to succeed on the merits, *id.* at 4-9, Plaintiffs Vigil and Perls will suffer irreparable First Amendment harms if they do not appear on the ballot, *id.* at 9, and the equities and public interest favor relief, *id.* at 9-10.

## II. Legal Standard

"To prevail on a motion for a preliminary injunction, the movant must establish that four equitable factors weigh in its favor: (1) it is substantially likely to succeed on the merits; (2) it will suffer irreparable injury if the injunction is denied; (3) its threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest." *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (citation omitted).

"[T]he following three types of specifically disfavored preliminary injunctions" require a heightened standard "'before such an injunction may be issued': (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004), *aff'd and remanded sub nom. Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006).

"[C]ourts in this Circuit must recognize that any preliminary injunction fitting within one of the disfavored categories must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* "Furthermore, because a historically disfavored preliminary injunction operates outside of the normal parameters for interim relief, movants seeking such an injunction are not entitled to rely on this Circuit's modified-likelihood-of-success-on-the-merits standard." *Id.* at 975-76. "Instead, a party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." *Id.* at 976.

## III. Discussion

Based on the following, since (1) Plaintiffs are not substantially likely to succeed on the merits, (2) Plaintiffs will not suffer irreparable injury if the injunction is denied, (3) Plaintiffs' threatened injury is not greater than that of the Defendant under an injunction, and (4) because granting a preliminary injunction is not in the public interest, the Court will deny Plaintiff's request for a preliminary injunction. *Beltronics USA*, 562 F.3d at 1070.

Before analyzing the factors, the Court addresses whether Plaintiffs are bringing an as-applied challenge.

### A. The Court considers this an as-applied challenge because Plaintiffs have characterized it as an as-applied challenge.

The Court finds that Plaintiffs are bringing an as-applied challenge. "An appellant may challenge the constitutionality of a statute by asserting a facial challenge, an as-applied challenge, or both." *United States v. Carel*, 668 F.3d 1211, 1217 (10th Cir. 2011) (citation omitted). "A facial challenge is a head-on attack [of a] legislative judgment, an assertion that the challenged statute violates the Constitution in all, or virtually all, of its applications." *Id.* (citation omitted). "In

contrast, '[a]n as-applied challenge concedes that the statute may be constitutional in many of its applications, but contends that it is not so under the *particular circumstances* of the case.'" *Id.* (citation omitted). "The nature of a challenge depends on how the *plaintiffs* elect to proceed—whether they seek to vindicate their own rights based on *their own circumstances* (as-applied) or whether they seek to invalidate a[] [statute] based on how it affects them *as well as other conceivable parties* (facial)." *Id.* (citation omitted).

Defendant argues that since the injunction would "strip the statutes of each and every application they have" by eliminating the signature and petition requirements for all minor party candidates, Plaintiffs have in effect asserted a facial challenge. Resp. at 6-7, ECF No. 13 (citing *Green Party of Tenn. v. Hargett*, 791 F.3d 684, 692 (6th Cir. 2015)).

Plaintiffs argue that they are not bringing a facial challenge but are bringing an as-applied challenge that rests on

> facts unique to them: NMFP's certification on May 14, 2026; the 41 days its nominees actually had to petition; the statutory registration pause of May 5 through June 8 that—by the Secretary's own account—locked Perls and Vigil out of the State's online petitioning platform; and the doubled 2% requirement that applies precisely because NMFP is new.

Reply at 2-3, ECF No. 14. Plaintiffs argue that the aggregate figures they cite, for instance that they must collect 131,361 signatures to field a full slate of statewide candidates, are demonstrative of their burden, not a concession of facial challenge even though the figures apply to all minor parties and minor party candidates positioned similarly. *Id.* at 3. And Plaintiffs insist that they are proceeding under an as-applied challenge even though the second and third counts in their complaint assert burdens against "minor parties and their candidates." *See id.* at 2-3; Compl. ¶¶ 86-87, 90, ECF No. 1.

In accordance with *Carel*, the Court approaches the challenge consistent with the Plaintiffs' characterization. 668 F.3d at 1217-18. The Court addresses only whether applying statutes to the particular circumstances of Plaintiffs' case violates the Constitution and expresses no opinion concerning whether statutes might violate the Constitution as they apply to other minor political parties and minor political party candidates. *Id.* at 1218.

**B. The Court will not grant a preliminary injunction.**

"To prevail on a motion for a preliminary injunction, the movant must establish that four equitable factors weigh in its favor: (1) it is substantially likely to succeed on the merits; (2) it will suffer irreparable injury if the injunction is denied; (3) its threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest." *Beltronics USA*, 562 F.3d at 1070. Preliminary injunctions that afford plaintiffs all the relief they could recover at the conclusion of a full trial on the merits, change the status quo, or mandate action are disfavored and require plaintiffs to make a strong showing regarding the likelihood of success on the merits and the balance of harms. *O Centro*, 389 F.3d at 975-76.

**(1) *Plaintiffs fail to make a strong showing that it is substantially likely to succeed on the merits.***

Granting a preliminary injunction to place Plaintiffs Perls and Vigil on the 2026 ballot would mandate action to change the status quo and grant Plaintiffs all the relief they could obtain at the conclusion of a trial. Plaintiffs must therefore make a strong showing that they are substantially likely to succeed on the merits. *Id.*; *Beltronics USA*, 562 F.3d at 1070.

Courts must resolve challenges to state election laws by "consider[ing] the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate." *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). The court

must then "identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule." *Id.* Finally, the court must "determine the legitimacy and strength of each of those interests" and "consider the extent to which those interests make it necessary to burden the plaintiff's rights." *Id.*

The rigorousness of the inquiry depends on "the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). When rights are subject to "severe" restriction, the regulation must be "narrowly drawn to advance a state interest of compelling importance." *Id.* (citation omitted). If the state law imposes only "reasonable, nondiscriminatory restrictions," the state's "important regulatory interests" are generally sufficient to justify the restrictions. *Id.* (citation omitted).

Since this is an as-applied challenge, the Court examines the statutes considering the unique facts of this case. *Carel*, 668 F.3d at 1217-18. The Court first sets out the unique facts of this case before turning to the arguments and analysis. The Court finds Plaintiffs are unlikely to succeed on the merits and therefore are not entitled to a preliminary injunction.

(a) *Specific facts of the as-applied challenge.*

New Mexico Statute § 1-8-2(B) requires statewide candidates of minor political parties whose membership totals less than one percent of the total number of votes cast for governor in the preceding general election to submit to the secretary of state, by the twenty-third day following the primary election in the year of the general election, a nominating petition containing the signatures of voters totaling not less than two percent of the votes cast for governor in the preceding general election. *See* § 1-8-51. Signatures may be obtained from any registered New Mexico voter. § 1-8-2(B). Because NMFP has only 227 registered members, their candidates for statewide office

had to obtain 14,200 signatures and submit them to the secretary of state by June 25, 2026. Mot. at 5-7, ECF No. 8.

The signatures must be on an authorized form, § 1-8-65(A), which the secretary of state makes available in March of the year they must be submitted, § 1-8-65(D). The candidate cannot declare his candidacy for the general election until the petition is handed in. § 1-8-65(B).

Under ideal circumstances, a minor party candidate for office has from the time the secretary of state makes the authorized forms available in March, § 1-8-65(A), (D), until sometime between June 25 and July 1, inclusive, to file her petition. *See* § 1-8-2(B); § 1-8-11.

NMFP did not submit its materials and qualify as a party until after the petition forms were made available. NMFP submitted the required materials for certification on May 8, 2026, Resp. at 8 n.2, ECF No. 13, and became a qualified party on May 14, 2026, Mot. at 13, ECF No. 8. On May 14, 2026, Plaintiffs Vigil and Perls could begin circulating petitions to obtain the required number of signatures. *Id.* Plaintiff Perls, for example, used paid petition circulators to "gather wet signatures on paper petitions at public events." Decl. of Perls ¶ 16, ECF No. 8-3.

In addition to obtaining signatures the old-fashioned way, candidates for office may obtain signatures via the state's online system. Mot. at 10, ECF No. 8. Due to NMFP's timing, however, candidate access to the online system was restricted. Between May 5 and June 8 there is a statutory pause in registration processing. *See* §§ 1-4-8(A), (B) (closing registration 28 days prior to elections); § 1-4-8(D) (restarting registration the Monday following an election). Since NMFP qualified during the pause, Plaintiffs Vigil and Perls could not update their registration to reflect NMFP until June 8, 2026. And since they could not update their registration until June 8, 2026, they could not use the online system to obtain signatures until June 8, 2026. Resp. at 10 n.3, ECF No. 13. Plaintiffs Vigil and Perls state that the online system was not available until June 12, 2026.

Decl. of Mi. Vigil ¶ 9, ECF No. 8-2; Decl. of Perls ¶ 15, ECF No. 8-3. Regardless, Plaintiffs Vigil and Perls were unable to utilize the online platform until June.

Overall, Plaintiffs spent $44,500 on "digital outreach," generating "nearly 1.66 million text messages sent to more than 500,000 registered voters." Mot. at 10, ECF No. 8. Plaintiffs state that although "[m]ore than 56,000 of these voters attempted to access the NMFP candidates' petitions online . . . the platform ultimately yielded fewer than 2,700 signatures . . . [because] the Secretary deactivated the online petitioning platform for almost the entirety of the NMFP candidates' petitioning period." *Id.* As recounted above, this statement is, at best, a misunderstanding of Plaintiffs' access to the system. Plaintiffs Vigil and Perls also state that they received anecdotal reports of issues with voter access after June 12, 2026. *See* Mot. at 10, ECF No. 8; Decl. of Perls ¶ 16, ECF No. 8-3.

Neither Plaintiff Vigil nor Plaintiff Perls submitted the required 14,200 signatures. Mot. at 10-11, ECF No. 8. Plaintiff Vigil obtained and submitted 4,400 signatures in his attempt to appear on the ballot as NMFP's nominee for state auditor. Decl. of Vigil ¶¶ 5, 12, ECF No. 8-2. Plaintiff Perls obtained and submitted 2,700 signatures in his attempt to appear on the ballot as NMFP's nominee for U.S. Senate. Decl. of Perls ¶¶ 6, 17, ECF No. 8-3.

Plaintiff Dinge, running for Public Education Commission, Plaintiff Montoya, running for Santa Fe County Magistrate Judge, and Plaintiff Kava, running for Luna County Magistrate Judge, gathered more than the required number of signatures. Mot. at 9-10, ECF No. 8. Plaintiffs Montoya and Kava were not members of the NMFP before "the party became qualified," as required by § 1-8-2(E), *id.* at 9-11, but both were ultimately placed on the ballot, Resp. at 2 n.1, ECF No. 13.

(b) *Merits.*

The Court now turns to Plaintiffs' arguments on the merits. Plaintiffs make several arguments about burdens imposed on them by the framework and several arguments about the state's interest in the framework, but not all of Plaintiffs' arguments address both their burden and the state's interests in a particular aspect of the framework. *See generally* Mot., ECF No. 8; Reply, ECF No. 14.

The Court's responsibility is to resolve challenges to state election laws by "consider[ing] the character and magnitude of the asserted injury," then "identify and evaluate the precise interests put forward by the State" as well as "determine the legitimacy and strength of each of those interests," and finally "consider the extent to which those interests make it necessary to burden the plaintiff's rights." *Anderson*, 460 U.S. at 789. Therefore, the Court will consider each aspect of the framework brought up by Plaintiffs in either context, burden or state interest. The rigorousness of the Court's inquiry depends on the burden imposed by the framework, whether reasonable and nondiscriminatory or severe. *Burdick*, 504 U.S. at 434.

First, the Court addresses Plaintiffs' challenges to § 1-8-2(E) and § 1-7-2(A) and finds they are not substantially likely to succeed on the merits because their legal rights under the statutes are no longer at issue. Then, the Court divides Plaintiffs' challenges to § 1-8-2(B) and §§ 1-8-65(A), (B), and (D) based on Plaintiffs' framing and addresses the burden on Plaintiffs and New Mexico's interest for each. The Court finds the burdens imposed on Plaintiffs are reasonable and nondiscriminatory, *Burdick*, 504 U.S. at 434, and, applying the appropriate rigor to the analysis, *id.*, New Mexico's important regulatory interests are sufficient to justify those burdens, *id.*

(i) *Plaintiffs' attempt to enjoin § 1-8-2(E).*

Plaintiffs move to enjoin § 1-8-2(E). The statute covers candidate registration requirements for candidates running as nominees of newly certified political parties. § 1-8-2(E). Plaintiffs Montoya and Kava were initially left off the ballot by the state for not complying with § 1-8-2(E), but both candidates are now registered NMFP members and the state has placed both on the ballot. Resp. at 2 n.1, ECF No. 13. Plaintiffs argue § 1-8-2(E) is "enforceable against Kava and every future NMFP candidate." Reply at 2, ECF No. 14.

"A case is moot 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Mukhtar v. Lambrecht*, 172 F.4th 836, 842 (10th Cir. 2026) (citations omitted). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Id.* (citation omitted). "The crucial question is whether granting a present determination of the issues offered will have some effect in the real world." *Id.* (citation omitted). "In assessing mootness, '[w]e take a claim-by-claim approach' and 'decide whether a case is moot as to 'each form of relief sought.'" *Id.* (citations omitted). "[A]n issue is rendered moot when an event occurs during the pendency of the litigation which deprives a plaintiff of an element of standing, such as redressability." *We the Patriots, Inc. v. Grisham*, 119 F.4th 1253, 1257 (10th Cir. 2024) (citation omitted).

When Plaintiffs filed their complaint and their Motion, Plaintiff Kava was not on the ballot. Plaintiff Kava, however, has been placed on the ballot. Resp. at 2 n.1, ECF No. 13. The issue of whether Plaintiff Kava should be placed on the ballot is therefore no longer live, likely rendering the issue moot. *Mukhtar*, 172 F.4th at 842. Alternatively, that event also likely deprives Plaintiff Kava of standing, again rendering this issue moot. *Grisham*, 119 F.4th at 1257. Since Plaintiffs'

attempt to enjoin § 1-8-2(E) is likely moot, Plaintiffs are not substantially likely to succeed on the merits.

Furthermore, as Plaintiffs bring an as applied challenge, § 1-8-2(E) applies to candidates of parties "certified in the year of the general election," and NMFP is now a certified party, Plaintiffs cannot vindicate the rights of "every future NMFP candidate" since they will not be in the same position as the candidates this year. Reply at 11, ECF No. 14; *Carel*, 668 F.3d at 1218.

(ii) *Plaintiffs' attempt to enjoin § 1-7-2(A).*

Plaintiffs move to enjoin § 1-7-2(A). New Mexico Statute § 1-7-2(A) governs the formation of new political parties. NMFP submitted its qualifying material as required by § 1-7-2(A) and was certified as a party by New Mexico on May 14, 2026. Mot. at 6, ECF No. 8. NMFP does not have to qualify again unless "two successive general elections are held without at least one of the party's candidates on the ballot" or, if the party has candidates for governor or President, those candidates do not receive one half percent of the total votes cast. § 1-7-2(C).

"[T]o satisfy the requirements of Article III standing, the plaintiff bears the burden of showing (1) an injury, (2) causation, and (3) redressability." *Grisham*, 119 F.4th at 1257 (citation omitted). "[F]or a party to properly invoke federal jurisdiction, we must be able to redress their alleged injuries." *Id.* (citation omitted). "Redressability considers whether the requested relief will redress the alleged injury." *Id.* (citation omitted). "Moreover, it must be likely, not merely speculative, that a favorable decision by this court will redress the alleged injury." *Id.* (citation omitted). "Furthermore, an issue is rendered moot when an event occurs during the pendency of the litigation which deprives a plaintiff of an element of standing, such as redressability." *Id.* (citation omitted).

NMFP qualified two months before Plaintiffs filed their complaint. *See* Mot. at 2, ECF No. 8. Whether NMFP will cease to be qualified and have to requalify is speculative. A Court decision on § 1-7-2(A) will have no legal effect on Plaintiff NMFP's current status and any future injury is speculative. Therefore, Plaintiff NMFP likely lacks standing to challenge § 1-7-2(A), *Grisham*, 119 F.4th at 1257 (citation omitted), and they are not substantially likely to succeed on the merits.

(iii) *Petition availability.*

Plaintiffs argue that their First Amendment rights are burdened by § 1-8-65(D) because the statute does not permit candidates to gather signatures before March of the year candidates must qualify. Mot. at 18-22, ECF No. 8 (citing *Meyer v. Grant*, 486 U.S. 414, 421-28 (1988)). Plaintiffs challenge only the timing of availability as a burden on their First Amendment rights. *See id.*

Defendant argues the statute imposes a reasonable content-neutral time, place, and manner restriction based on state interest in regulating elections. Resp. at 17-21, ECF No. 13 (citations omitted).

This is an as-applied challenge and, since NMFP candidates could not use the forms until NMFP qualified as a minor party on May 14, 2026, Mot. at 6, ECF No. 8, the availability of forms earlier than March has no impact on Plaintiffs' rights. The Court therefore finds no First Amendment burden as applied to Plaintiffs.[2]

Alternatively, the Court finds the availability of forms in March is a reasonable timing restriction based on New Mexico's interest in regulating elections. The state has an important

---

[2] Plaintiffs claim that *Grant* dictates the result here, Mot. at 18-19, ECF No. 8; Tr. of Hr'g of Aug. 28, 2026, at 13:1 – 14:14, 83:20 – 84:9, but *Grant* was about the payment of signature gatherers, not the period in which petitions were available. 486 U.S. at 415-16 ("In Colorado the proponents of a new law, or an amendment to the State Constitution, may have their proposal placed on the ballot at a general election if they can obtain enough signatures of qualified voters on an 'initiative petition' within a 6-month period. One section of the state law regulating the initiative process makes it a felony to pay petition circulators. The question in this case is whether that provision is unconstitutional."). The six-month petitioning period in *Grant* was not challenged or addressed. *See generally id.*

interest in confining petitioning to a specific window prior to elections, considering the state must attend to other election-related responsibilities at other times, and the state has interest in ensuring candidate support is demonstrated sufficiently close to the election to guard against voter support waning over time. *See Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997).

(iv) *Time to acquire signatures and number of signatures.*

Plaintiffs argue that the requirement to gather 127,800 signatures to field a full slate of ten statewide candidates is a severe burden. *See* Mot. at 5-7, ECF No. 8; § 1-8-2(B). Plaintiffs also argue that, since one measure of burden is "whether a state's requirements are more restrictive than those of other states," and New Mexico's petition requirement is "by far" greater than the requirement imposed by any other state, the requirement is a severe burden. Mot. at 12, ECF No. 8 (citing *Williams v. Rhodes*, 393 U.S. 23, 47, 47 n.10 (1968) (Harlan, J., concurring); Winger Decl. ¶ 21, ECF No. 8-1). Plaintiffs additionally argue they are burdened by having "just 41 days to circulate petitions" between the date NMFP qualified and the date on which petitions were due. *Id.* at 13; § 1-8-2(B).

Defendant argues NMFP chose to form after petitions became available, thus giving candidates a shorter window to collect signatures. Resp. at 8-10, ECF No. 13; *see also id.* at 13 (citing *Libertarian Party of N.M. v. Vigil-Giron*, CIV-06-0615 MV/ACT, 2006 WL 8443845, at *10 (D.N.M. Sept. 18, 2006) *aff'd sub nom. Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303 (10th Cir. 2007)). Defendant argues that the signature requirement burden is not significant because courts have found greater numbers of signatures in less time not to be a significant burden even when candidates could not obtain online signatures. *Id.* at 8-10 (citations omitted).

Plaintiffs reply that New Mexico's regulatory architecture "guarantees" that minor party candidates of newly formed minor parties always have a "compressed window" to obtain signatures. Reply at 5, ECF No. 14.

First, Plaintiffs' claim that the framework requires a truncated window is unsupported. The Court finds that, under the facts of this case, NMFP's forty-one day window to gather signatures was self-imposed and therefore the "compressed window" was not a burden imposed on Plaintiffs by the regulatory architecture. *Vigil-Giron*, 2006 WL 8443845, at *10 ("[T]here is no requirement that a party (if it anticipates being unable to complete the new party and candidate petitions) run candidates the year that it is recognized . . . and there is nothing that prohibits a political party from seeking to be qualified as a political party well before the election in which they wish to run candidates."). Nothing prevented NMFP from forming prior to the availability of the petition forms. *Id.* Had NMFP formed in January 2026 its candidates could have started obtaining signatures immediately when forms became available and could have accessed the online petitioning system when it became available.

Further, Plaintiffs' argument that New Mexico's burden is more severe than other states is both minimally supported and, on its own, not enough to establish that the burden is severe. Plaintiffs claim that New Mexico has a greater signature requirement than any other state. Mot. at 12, ECF No. 8; Tr. of Hr'g of Aug. 28, 2026, at 78:3-9 ("The problem, the constitutional infirmity with New Mexico's two-tier structure, is that it leads to massive, exponentially greater signature requirements than any other—than—not any other state, because Texas is 81,000."). Plaintiffs offer in support the lesser signature requirements of Texas, Utah, and Colorado, Mot. at 12-13, ECF No. 8; Tr. of Hr'g of Aug. 28, 2026, at 78:6-14, other case law regarding freezing the political status quo and cost, Mot. at 13-16; *see infra* III.B.1.b.vii-viii, and their argument about petition

availability in March, *see supra* III.B.1.b.iii. Plaintiffs claim that they submitted the evidence lacking in *Libertarian Party of NM v. Herrera*, 506 F.3d 1303 (10th Cir. 2007). Reply at 7, ECF No. 14 ("Plaintiffs here have supplied precisely the record *Herrera* found missing: the nation-leading aggregate requirement, the comparative data from every other state, the historical qualification record, and the cost evidence.") (citing Mot. at 12-16, ECF No. 8).

First, Plaintiffs' evidence is not enough to establish that New Mexico's requirement is more burdensome than any other state, especially considering the disparity in the type of state requirements (petitions, electoral support in prior elections, etc.) and the disparity in state populations. Second, this is not the type of evidence listed in *Herrera*. 506 F.3d at 1310 ("The Libertarian Party alleged that the one-half percent party petition requirement, when combined with the one and one-half percent candidate-petition, was unconstitutionally burdensome. It failed, however, to offer any evidence to support this claim. The candidates themselves did not attempt to obtain the signatures and therefore proffered no testimony as to the burdens the requirement placed on them. Affidavits from other similarly situated minor party candidates, such as the Green Party, were not obtained to establish the character and magnitude of the injury imposed by the candidate petition."). And finally, even if New Mexico did have the most stringent ballot-access framework compared to other states, that does not make it unconstitutional. If that were the case, one state's system would always be unconstitutional. Other states' systems are a means of comparison, nothing more. *See Rhodes*, 393 U.S. at 47 (J. Harlan, concurrence).

Furthermore, the Court does not find the candidate signature requirement a severe burden. NMFP claims it must obtain 131,361 signatures, bumping the number up from 127,800 by including the 3,561 signatures required by NMFP to qualify as a party. Mot. at 7, 12, 16, ECF No. 8; Reply at 3, ECF No. 14. But this misrepresents the burden on Plaintiffs. The requirement to

obtain signatures falls on the candidate for office. § 1-8-2(B). The candidate must obtain 14,200 signatures in the allotted time. The party may help the candidate, but the onus is not on the party to gather signatures for their candidates, therefore it is inaccurate to portray the signature requirement as one imposed on the party to field a full statewide slate. Furthermore, no candidate may run for more than one office, so no candidate must obtain more than 14,200 signatures. And finally, the party, and candidates, may appeal to voters to sign more than one petition at one time. Therefore, although the total number of signatures required by ten NMFP candidates is 127,800, those ten candidates could conceivably obtain their signatures from the exact same 14,200 registered voters.

The Court finds this to be a reasonable burden, not a severe one, over the period allotted for petitioning. *See e.g., Jenness v. Fortson*, 403 U.S. 431, 438-39 (1971) (holding reasonable a requirement to obtain the signatures of five percent of the total registered voters in Georgia over sixth months); *Am. Party of Tex. v. White*, 415 U.S. 767, 783-85 (1974) (holding reasonable a requirement for minor political party candidates to obtain signatures of one percent of the total vote for Texas governor over fifty-five days); *Storer v. Brown*, 415 U.S. 724, 740 (1974) (finding gathering signatures at a rate of 13,542 per day in California not an "impossible burden" or "an impractical undertaking," even if it would be a "substantial requirement").

As for the state interest, the Courts finds New Mexico has an important interest in requiring candidates demonstrate support, *Jenness*, 403 U.S. at 442, and the requirement that minor party candidates obtain signatures serves this interest.

(v) *Plaintiffs' challenge to the two-step minor party framework considering major party requirements.*

Plaintiffs argue New Mexico has no state interest in the requirement for minor party candidates to demonstrate support by obtaining signatures since the minor party has already demonstrated support by obtaining signatures. Mot. at 17, ECF No. 8. Plaintiffs contrast their requirements with the ability of major party candidates to appear on ballots after an uncontested primary and argue minor parties receive unequal treatment. Reply at 8-9, ECF No. 14.

Defendant argues that New Mexico's two-step framework mirrors the New Mexico major party candidate requirements, Resp. at 11, ECF No. 14, and has already been upheld by this Court, *id.* at 3 (citing *Vigil-Giron*, 2006 WL 8443845, at *11), and a similar system was upheld by the Third Circuit, *id.* at 3, 10 (citing *Rogers v. Corbett*, 468 F.3d 188 (3d Cir. 2006)). Defendant argues that the framework "'does not inflate the burden on the plaintiffs,' and makes no difference given 'analogous obligations to demonstrate continuing voter support in the retention requirements found in other states.'" *Id.* at 11 (citing *Rogers*, 468 F.3d at 197).

As to the public interest, Defendant argues that New Mexico has an interest in organized elections to prevent overcrowding, voter confusion, and frivolous candidates. *Id.* at 14 (citations omitted). Defendant argues the two-step framework requiring both minor parties and minor party candidates to obtain signatures serves this interest, *id.* at 14-15 (citations omitted), as does the similar system in place for major parties, *id.* at 15.

Plaintiffs dispute Defendant's claim that the framework has been upheld by the Tenth Circuit, Reply at 5-6, ECF No. 13 (citing *Herrera*, 506 F.3d 1303), or that Defendant's position is supported by the Third Circuit, *id.* at 6 (citing *Rogers*, 468 F.3d 188; *Constitution Party of Penn.*

*v. Cortes*, 824 F.3d 386 (3d Cir. 2016)), because major party candidates can reach the primary ballot by receiving 20% of the vote at the party convention instead of submitting a petition, *id.*

First, Plaintiffs' argument that major party candidates get preferential treatment is incorrect. The two schemes are devised to demonstrate support based on the stature of the party within the state. Resp. at 16, ECF No. 13. Major parties are major parties because the party has established state-wide support based on its performance in the previous election. § 1-7-7(A) ("'[M]ajor political party' means any qualified political party, any of whose candidates received as many as five percent of the total number of votes cast at the last preceding general election for the office of governor or president of the United States, as the case may be, and whose membership totals not less than one-third of one percent of the statewide registered voter file on the day of the governor's primary election proclamation."). But New Mexico still requires major party candidates to demonstrate support. To appear on the statewide general ballot, major party candidates must win a primary election. § 1-8-1(A). To appear on a primary ballot, candidates must either gain twenty percent of the vote in a major party convention, § 1-8-21.1(C), or obtain from registered members of that major party signatures equal to two percent of the total vote cast for the party's candidate for governor, Resp. at 11, ECF No. 13; § 1-8-33(B). Hence, even if the primary is uncontested, the candidate has demonstrated support prior to appearing on the general election ballot.

Plaintiffs believe the equivalent requirement for a minor party candidate would be nomination by a minor party without a signature requirement. Mot. at 17, ECF No. 8 ("The nominees of a qualified minor party like NMFP have demonstrated support by winning the nomination of a qualified party no less than the nominees who win a major party's nomination in a primary election."). Per Plaintiffs' logic, a candidate nominated by the NMFP, which has 227

members and can handpick nominees, § 1-8-1(B); § 1-8-2 (permitting minor party candidate nomination by convention); § 1-8-3 (requiring the state chair and governing board of minor parties to certify the names of candidates to the secretary of state if the party nominates by "a method other than a political convention"), has demonstrated the same support as a candidate who received either twenty percent of the vote at a major party convention or obtained signatures from a number of major party members equivalent to two percent of the votes cast for that party's nominee for governor. That is not the case.

Just as major parties have a vote and membership requirement to remain major parties, § 1-7-7(A), minor parties have a vote and signature requirement, §§ 1-7-2(A), (C). And just as major party candidates have either a twenty percent convention support or a signature requirement to get to the primary and then general ballots, § 1-8-21.1; § 1-8-33(B), minor party candidates have a signature requirement to get to the general ballot, § 1-8-2(B).

Under New Mexico's framework both major and minor parties, and their candidates, have a similar reasonable burden to demonstrate support. Where major party candidates must show support to appear on their party's primary ballot, minor party candidates get to skip the primary but must show support to appear on the general election ballot. The Court finds different schemes for major and minor parties are reasonable because both schemes have the same purpose: to ensure candidates demonstrate a modicum of support before appearing on the ballot. *Jenness*, 403 U.S. at 442.

Further, the Court finds New Mexico has an important regulatory interest in the framework challenged by Plaintiffs, an interest Plaintiffs acknowledge. Reply at 6, ECF No. 14 ("Plaintiffs do not dispute that a State may require candidates to show a modicum of support."). The system was also found sound by this Court in a previous challenge. *Vigil-Giron*, 2006 WL 8443845, at *11.

And, as Defendant points out, a similar system was upheld by the Third Circuit. *Rogers*, 468 F.3d at 197 ("[T]he minimal burdens on minor political parties was justified by Pennsylvania's interest in preventing ballot clutter and ensuring viable candidates.").

Furthermore, the Court is not persuaded by Plaintiffs' citation of *Maryland Green Party v. Maryland Board of Elections*, 832 A.2d 214 (2003). In Maryland, major party candidates could reach the ballot based on votes cast for the party's candidates in the previous election and a single vote in the major party primary. *Id.* at 232-33. Whereas minor party candidates had a signature requirement on top of the minor party's signature requirement. *Id.* at 236. And, since the candidate's signature requirement was less than the minor party's requirement, the court felt it did not add anything to the demonstration of support. *Id.* The court found, therefore, that minor parties were treated unequally in violation of the Maryland constitution. *Id.* New Mexico's system, in contrast, requires candidates of both major and minor parties to show support. And minor party candidates in New Mexico must demonstrate support equal to or greater than the minor party. The comparison is inapt and the court does not find *Maryland Green Party* persuasive.

New Mexico's important regulatory interest in candidates for office demonstrating support justifies the reasonable, nondiscriminatory burden placed on minor party candidates to gather signatures via petition before being placed on the general election ballot, and that burden is reasonably similar to the burden on major parties.

(vi) *Double Signature Requirement.*

Plaintiff argues New Mexico has no interest in requiring candidates of minor parties whose membership is less than one percent of the total vote for governor in the previous election ("small minor party") to gather more signatures than candidates for parties whose membership is more than one percent of the total vote for governor in the previous election ("large minor party"). Mot.

at 17, ECF No. 8. NMFP is a small minor party and its candidates must gather 14,200 signatures for the 2026 election. Mot. at 6, ECF No. 8. If NMFP had 7,100 members, its candidates would have to gather only 7,100 signatures. *Id.* Plaintiff argues the requirement is "punitive and arbitrary" and is "especially pernicious as applied to a newly qualified minor party like NMFP, because [NMFP] almost certainly will not have time to grow its membership to the requisite threshold before its nominees must submit their petitions." *Id.* at 17.

Defendant does not address the increased requirement for signatures based on the number of minor party members, *see generally* Resp., ECF No. 13; Reply at 7, ECF No. 14, other than the state interest in regulating elections, Resp. at 14, ECF No. 13.

First, as this is an as-applied challenge, the Court finds Plaintiffs' argument about time to grow membership inapplicable because the framework is not responsible for Plaintiff NMFP's truncated window to recruit members. *See Vigil-Giron*, 2006 WL 8443845, at *10. Had NMFP formed earlier, perhaps shortly after the previous election, it may have had time to reach the membership number required to reduce its candidates' signature requirement.

Second, the Court finds New Mexico's interest in ensuring candidates demonstrate a modicum of support is sufficient to justify the differing schemes for small and large minor parties. A large minor party has more demonstrated support than a small minor party based on its larger membership. That being the case, it is only sensible that a candidate from the former has less of a hurdle to demonstrate support for her candidacy than a candidate from the latter. *See Jenness*, 403 U.S. at 442.

Third, the Court has no reason to doubt the New Mexico Legislature's choice in what divides small from large minor parties, nor its choice as to how many signatures must be secured by candidates from each type of party.

The Court does not find the increased requirement an unequal application of the law because the different treatment is justified by New Mexico's important regulatory interest in candidates from both small and large minor parties demonstrating support before being placed on the ballot.

(vii) *Cost.*

Plaintiffs argue that ballot access cost is a severe burden. Mot. at 15-16, ECF No. 8 (citations omitted). Defendant does not address cost. *See generally* Resp., ECF No. 13. The Court does not find cost to be a severe burden on Plaintiffs.

Plaintiffs cite *Graveline v. Benson*, 430 F. Supp. 3d 297 (S.D. Mich. 2019), but the Court finds that case, in which a district court found Michigan's regulatory scheme imposed a severe burden on independent candidates, *id.* at 311, minimally persuasive. In *Graveline* the independent candidate did not have financial backing from a party, as here, and the financial burden was only part of the severe burden imposed, which included an early filing deadline and a 30,000-signature requirement. *Id.* at 308-09. Nor is the Court persuaded by *Green Party of Georgia v. Kemp*, 171 F. Supp. 3d 1340 (N.D. Ga. 2016), which Plaintiffs assert found "evidence showing a petition drive costing anywhere from $70,000 to $350,000 *sufficient* to support a finding of a severe burden." Mot. at 15, ECF No. 8 (emphasis added). In that case, however, it was the high number of signatures required to qualify for the Presidential ballot, 50,000, that imposed the severe burden, *Green Party of Ga.*, 171 F. Supp. 3d. at 1363, not the cost, and the court found that many factors, including the nation's interest in Presidential ballot access, favored striking down the requirement, *id.* at 1368.

Here, Plaintiffs spent $63,000 on attempting to acquire signature petitions. Mot. at 10, ECF No. 8. Based on testimony in *Green Party of Georgia* that a paid petition circulator charges about

$2 per signature, 171 F.Supp.3d 1340 at 1350, the $63,000 spent by NMFP and its candidates could have gone a fair way towards qualifying one or both statewide candidates, Mot. at 10, ECF No. 8. In the event, however, it appears NMFP spent most of its funds on text messages when the party did not have access to the online petition platform. *See id.* Unfortunate timing does not equate to a severe burden imposed by the state. The Court finds the cost of acquiring signatures is an unavoidable burden, but not an unreasonable or a severe one.

(viii) *Freezing the Status Quo.*

Plaintiffs argue that New Mexico's statutory scheme imposes a severe burden because it freezes the "political status quo" based on the infrequency of minor party candidates appearing on the ballot in New Mexico. Mot. at 13-15, ECF No. 8 (citing *Jenness*, 403 U.S. at 438).

Defendant argues the fact that three of NMFP's candidates are on the ballot defeats Plaintiffs' argument. Reply at 13, ECF No. 13.

The Court finds that, in an as-applied challenge, Plaintiffs' status quo argument is not coherent because NMFP candidates are running in New Mexico elections for the first time this year. Whether NMFP candidates appear frequently or infrequently is not ascertainable.

In the alternative, however, the Court does not find the frequency of minor candidate appearances as related by Plaintiffs to be proof of freezing the status quo. First, Plaintiffs' citation to *Jenness* is inapposite. In *Jenness* the Supreme Court contrasted Georgia's electoral scheme with Ohio's, which had been found to freeze the status quo. 403 U.S. at 437-38 (citing *Rhodes*, 393 U.S. at 34-37). New Mexico has none of the hallmarks of Ohio's scheme noted by the court: not permitting independent candidates, not permitting write-in candidates, an unreasonably early filing deadline for candidates not endorsed by established parties, and a requirement for an elaborate primary election system for new or minor parties. *Id.* at 438.

Second, the number of minor party or independent candidates who appear on ballots, which can be an indication that the regulatory framework permits a "reasonably diligent" candidate to satisfy the requirements, *see Storer*, 415 U.S. at 742, does not indicate New Mexico has frozen the status quo. As Defendant points out, Plaintiffs' local candidates qualified despite the self-imposed compressed timeline, despite the newness of their party, and despite lacking the widespread name recognition enjoyed by recently qualified candidates from parties like the Green Party or Libertarian Party. Resp. at 13, ECF No. 13.

Plaintiffs have shown that reasonably diligent candidates can access the ballot and therefore the regulatory scheme does not freeze the status quo. *See Storer*, 415 U.S. at 742.

(ix) *Conclusion.*

The Court finds New Mexico's important regulatory interests outweigh the minimal reasonable burden imposed on Plaintiffs, and therefore Plaintiffs are not substantially likely to win on the merits.

**(2) *In the absence of a likelihood of success on the merits, Plaintiffs' motion for preliminary injunction cannot succeed.***

"To prevail on a motion for a preliminary injunction, the movant must establish that four equitable factors weigh in its favor: (1) it is substantially likely to succeed on the merits; (2) it will suffer irreparable injury if the injunction is denied; (3) its threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest." *Beltronics USA*, 562 F.3d at 1070. A party seeking a preliminary injunction must prove that all four of the equitable factors weigh in its favor. *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 888 (10th Cir. 2013) (citing *Beltronics USA*, 562 F.3d at 1070). "[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Id.* at 889 (citing *Beltronics*, 562 F.3d at 1070).

Plaintiffs have failed to demonstrate they are likely to succeed on the merits; therefore they cannot prevail on their motion. *Id.* The Court will deny the motion accordingly but addresses the remaining factors below.

(a) *Plaintiffs cannot establish irreparable harm.*

Granting a preliminary injunction requires Plaintiffs to show that they are likely to suffer irreparable harm. *Beltronics USA*, 562 F.3d at 1070; *see O Centro*, 389 F.3d at 975-76.

Plaintiffs argue their "irreparable harm is severe and imminent" because, "[a]bsent relief, Plaintiffs Perl, Vigil and Kava will be excluded from New Mexico's 2026 general election ballot, which will cause irreparable harm to Plaintiffs' voting, speech, and associational rights." Mot. at 22, ECF No. 8.

Defendant argues that "[P]laintiffs do not have an unqualified right to appear on a ballot . . . [and] New Mexico may place appropriate requirements on would-be candidates to show they have sufficient support." Resp. at 21, ECF No. 13. Defendant also argues "[t]he presence of irreparable injury to [P]laintiffs' rights 'turns on whether the plaintiff has shown a clear likelihood of success on the merits,' and they have not." *Id.* (citing *SAM Party of N. Y. v. Kosinski*, 987 F.3d 267, 278 (2d Cir. 2021)).

Plaintiffs reply that, since they are substantially likely to succeed on the merits, Plaintiff Perls and Vigil's exclusion is an irreparable injury. Reply at 9, ECF No. 14.

Plaintiff has failed to show irreparable harm because its identified irreparable harm is the future harm to Plaintiffs Vigil, Perls, and Kava. Plaintiff Kava is already on the ballot. Plaintiffs Vigil and Perls are unlikely to succeed on the merits.

(b) *Plaintiffs' threatened injury does not outweigh injury to Defendant and an injunction would be against public interest.*

Granting a preliminary injunction requires Plaintiffs to make a strong showing that their alleged injury outweighs the injury the opposing party will suffer under the injunction and granting the injunction would not be against public interest. *Beltronics USA*, 562 F.3d at 1070; *O Centro*, 389 F.3d at 975-76. In the case of preliminary injunctions against the government, factors three and four merge. *Ortega v. Grisham*, 148 F.4th 1134, 1142 (10th Cir. 2025) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

Plaintiffs argue that "New Mexico's interest in limiting ballot access to candidates with demonstrated support is not served by excluding candidates who have in fact demonstrated support by winning the nomination of a qualified political party," Plaintiffs Vigil and Perls "will be deprived of their 'most precious [First Amendment] freedoms,'" "[t]he requested injunction will serve the public interest by protecting the right of all New Mexicans to cast their votes effectively" since the Republican Party is fielding a write-in candidate for U.S. Senate and is not fielding a candidate for state auditor, it is in the public interest to "prevent the violation of a party's constitutional rights," and New Mexico "does not have an interest in enforcing a law that is likely constitutionally infirm." Mot. at 22-24, ECF No. 8 (citations omitted).

Defendant responds that balancing harms and public interest is already addressed by weighing the burden on Plaintiffs against New Mexico's interests, Resp. at 22, ECF No. 13, that it is of "fundamental importance" to limit ballots to a "reasonable size" lisitng "serious candidates with some prospects of public support," *id.* (citing *Lubin v. Panish*, 415 U.S. 709, 715 (1974)), that "[p]reventing a state 'from conducting this year's elections pursuant to a statute enacted by the Legislature,' unless unconstitutional, would 'seriously and irreparably harm the State,'" *id.*

(citing *Abbott v. Perez*, 585 U.S. 579, 602 (2018)), that all candidates being major party candidates is insufficient to establish harm, *id.* (citation omitted), that "granting a preliminary injunction would cause extreme disruption to the Legislature's carefully constructed regulation of ballot access, without any corresponding demonstration of entitlement by these plaintiffs," *id.* at 22-23, and that the remedy would discriminate against other minor parties, *id.* at 23 (citation omitted).

Plaintiffs reply that Defendant's argument "depends entirely on her merits position," Defendant's administrative burdens are overstated, and the Court would not be in the position of "deciding who is on the ballot," as argued by Defendant, Resp. at 4, ECF No. 13, because, since Plaintiffs Perls and Vigil "each demonstrated support exceeding what New Mexico demands of major-party statewide candidates," "[p]lacing them on the ballot vindicates the Legislature's constitutional enactments while declining to enforce its unconstitutional ones," Reply at 9-10, ECF No. 14.

The Court finds the potential harm to the public interest outweighs harm to the Plaintiffs. Ultimately, Plaintiffs' complained-of harm rests on alleged constitutional violations. But the Court has not found any constitutional violations. *See supra* III.B.1.iii-viii. Plaintiffs will not suffer harm because of the denial of their Motion because they are not entitled to appear on the ballot. *Id.* If, however, they were placed on the ballot, New Mexico's public interest would be harmed.

Placing Plaintiffs Vigil and Perls on the ballot despite not having obtained the statutorily-required number of signatures would prevent New Mexico from executing elections pursuant to the framework designed by the Legislature to ensure ballots are limited to candidates with demonstrated support. This constitutes irreparable harm to the state. *Perez*, 585 U.S. at 602.

Furthermore, the potential effect on the 2026 election and future elections compounds the harm to public interest. Such a decision could be cited by other 2026 minor party candidates who

did not receive the benefit granted to Plaintiffs' Vigil and Perls. And New Mexico would be hard pressed to prevent future minor party candidates from appearing on the ballot despite not obtaining the statutorily required number of signatures.

All preliminary injunction factors weigh against granting a preliminary injunction.

## IV. Conclusion

In summary, Plaintiffs have not established that any of the four equitable factors support a preliminary injunction. For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for a Preliminary Injunction is **DENIED**.

Margaret Strickland

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE